181 So. 782

**SHEPHERD v. KENDRICK et al.**

6 Div. 240.

Supreme Court of Alabama.

May 12, 1938.

Rehearing Denied June 16, 1938.

McEniry & McEniry, of Bessemer, for appellant.

Bradley, Baldwin, All & White and W. A. Rose, all of Birmingham, for appellees.

GARDNER, Justice.

The bill discloses that complainant purchased from Julian Kendrick, now deceased, certain lands therein described, for the purpose of operating a dairy. Deed was duly executed upon the payment of $3,000 cash, and the execution of notes and a mortgage on the land to secure the remainder of the purchase price of $21,000. The executors of the Kendrick estate threatened a foreclosure of the mortgage, which composes the larger part of the estate which is alleged to be insufficient to repay complainant for the injury and damage he has sustained.

Complainant avers that the water supply on the land is insufficient for dairy purposes,

and it was necessary to erect wells to supplement the natural streams, and that before he discovered this fact he had expended in improvements a large sum of more than $21,000 in improvements upon the land. He charges fraudulent misrepresentations as to the water supply upon which he acted to his injury, and seeks a reduction of the mortgage indebtedness to the amount of damages suffered by the vendor's fraud. An accounting is sought, and offer to do equity and to pay, within the time allowed by the court, whatever sum may be found due upon such accounting. The bill also prays for injunctive relief against the foreclosure of the mortgages.

The bill is not one for rescission of a sale contract for fraud as in Perry v. Boyd, 126 Ala. 162, 28 So. 711, 85 Am.St. Rep. 17; Mortgage Bond Co. v. Carter, 230 Ala. 387, 161 So. 448; Harris v. Nichols, 223 Ala. 58, 134 So. 798; Bullard Shoals Mining Co. v. Spencer, 208 Ala. 663, 95 So. 1; Merritt v. Ehrman, 116 Ala. 278, 22 So. 514; Catanzano v. Hydinger, 228 Ala. 547, 154 So. 588; Catanzano v. Hydinger, 233 Ala. 116, 170 So. 214. Nor is it a bill merely seeking to invoke the well-recognized principle that a court of equity will prevent perversion of the power of sale in a mortgage from its legitimate purpose to that of oppression of the debtor and to purposes foreign to that for which it was intended (Ballenger v. Price, 219 Ala. 412, 415, 122 So. 628), though the restraint of foreclosure proceedings may here be incidentally involved.

The equity of the bill, however, may well rest upon the right of the mortgagor to exercise his equity of redemption (Adams v. Whitehead, 234 Ala. 389, 175 So. 356; Cox v. Davis-Wilson-Gaillard Commission Co., 206 Ala. 167, 89 So. 437; O'Rear v. Kimbro, 227 Ala. 22, 148 So. 435), and for the abatement of the purchase price because of damages suffered by fraudulent representations of the vendor, somewhat akin to the bill considered in Neal v. Williams, 168 Ala. 310, 53 So. 94, where the vendee sought specific performance and an abatement of the purchase price on account of the vendor's fraud.

The case of Wendell v. Ozark Orchard Co., Mo.App., 200 S.W. 747, cited in 51 A.L.R. p. 82, was a bill by the mortgagor, as here, and is more directly in point, and in this respect states principles which are in harmony with our own.

But it is insisted the bill discloses no actionable fraud, no statement of an existing fact, but an expression of an opinion, and relating to the future, and which gives no right to action, citing, among other authorities, 26 Corpus Juris 1065; 66 Corpus Juris 572; Palmetto Bank & Trust Co. v. Grimsley, 134 S.C. 493, 133 S.E. 437, 51 A.L.R. 46; Patton v. Tidwell, 17 Ala.App. 663, 87 So. 624; Munroe v. Pritchett, 16 Ala. 785, 50 Am.Dec. 203; Bomar v. Rosser, 131 Ala. 215, 31 So. 430; Bradfield v. Elyton Land Co., 93 Ala. 527, 8 So. 383; Joseph v. Decatur Land, Imp. & Furnace Co., 102 Ala. 346, 14 So. 739.

But we think the argument overlooks some very material averments of the bill. It is shown that at the time of inspection of the land there were several streams of water thereon of sufficient volume for a dairy business of one hundred and fifty cows. The vendor and his agent were informed complainant was purchasing for an extension of his dairy business, and it was this supply of water, that is, the supply which he had then observed on the land, that both the vendor and his agent assured him was a permanent supply, and that "said streams were never dry * * * and that he had owned said lands for several years." Complainant did not know the land nor whether the water supply was permanent, but relied upon the assurance thus given him. Large expenditures were made before the dry season, and after being completed the summer months of 1928 came on and the water supply was greatly diminished, "one or two streams of large volume of water completely dried up," and the lands were left without sufficient water supply for a dairy of one hundred and twenty cows, and it was necessary to bore wells. But this is not all, for in paragraph 6 of the bill the vendor's intent to deceive is averred in the following language: "That the representations made by said Julian Kendrick that said water supply was permanent on said lands, were false; that said Julian Kendrick knew that said representations were false at the time he made them, and that he fraudulently made said representations at said time with the intent to induce the complainant to purchase said lands."

The Michigan court in Kefuss v. Whitley, 220 Mich. 67, 189 N.W. 76, quotes approvingly the statement of Lord Bowen

in Smith v. Land & House Property Corporation, L.R., 28 Ch.Div. 15, as follows (page 81): "It is material to observe that it is often fallaciously assumed that a statement of opinion cannot involve the statement of a fact. * * * If the facts are not equally known to both sides, then a statement of opinion by the one who knows the facts best involves very often a statement of a material fact, for he impliedly states that he knows facts which justify his opinion."

■ And the author of the notes found in 51 A.L.R. p. 63, makes the following observation: "If one makes a statement regarding an event to take place in the future, obviously the statement should ordinarily be regarded merely as an expression of opinion, and the courts will frequently stop at this point and hold that such a statement cannot serve as a basis on which to predicate fraud. But if there are circumstances tending to show an actual fraudulent intent at the time the promise or representation regarding a future event is made, then the situation is entirely changed. According to the weight of authority, if the person making the promise of statement as to a future event is guilty of an actual fraudulent intent, and makes the promise or misrepresentation with the intention of deceiving and defrauding the other party, and accomplishes this result, to the latter's injury, fraud may, under many circumstances, be predicated thereon, notwithstanding the future nature of the representations. This result is reached frequently on the theory that a person's intention or belief is a matter of fact, and that, therefore, if a misrepresentation is made with regard to the same, the misrepresentation is one of fact. But the particular circumstances determine largely the result in this class of cases. This seems to be true, partly, at least, for the reason that the questions whether a representation should be regarded as a mere expression of opinion, and whether one to whom it is made ordinarily does and has a right to rely thereon, depend on the nature of the representation and the relation of the parties."

Numerous illustrative cases are noted, among them that of McGar v. Williams, 26 Ala. 469, 62 Am.Dec. 739, which tends to sustain the author's observation. The following additional authorities likewise sustain this view: Bradfield v. Elyton Land Co., 93 Ala. 527, 8 So. 383; Griel v. Lomax, 89 Ala. 420, 6 So. 741; Joseph v. Decatur Land, Imp. & Furnace Co., 102 Ala. 346, 14 So. 739.

In Griel v. Lomax, supra, the Court observed (page 744): ."It may be construed into an expression of opinion by him merely, and nothing more. And, if construed as an opinion, to be fraudulent it must be shown to be knowingly false, made with intent to deceive, and to have been accepted and relied on by the plaintiff as true." To like effect is the following from Bradfield v. Elyton Land Co., supra: "Furthermore, if Caldwell represented that the railroad would be 'permanently operated' in the future on [said] avenue, and if the statement amounted to less than an 'engagement,' the representation necessarily 'consisted in opinion.' 'That, to be the basis of a legal right in any case, must be knowingly false, and uttered with intent to deceive.' 'Less than intentional deception in such conditions gives no right of action.' Griel v. Lomax, 89 Ala. [420] 427, 6 So. 741; Montgomery So. R. Co. v. Matthews, 77 Ala. [357] 366 [54 Am.Rep. 60]. The averments of the amended bill are wholly insufficient in failing to charge intentional deception, and the proof insufficient to sustain the charge if it had been made." See, also, discussion of this question in the more recent case of Cartwright v. Braly, 218 Ala. 49, 117 So. 477.

■ Here the facts were not equally known to both sides. Complainant did not know the land, but the vendor knew it, and the statement as to the permanency of the then existing water supply involved in a way a statement of fact for he impliedly stated that he knew facts which justified his opinion. And with this as a basis, complainant charges the vendor with knowingly making the false representations with intent to induce the purchase. Both upon reason and authority, we think the bill sufficiently charges actionable fraud.

■ Upon the question of laches some difficulty arises. Each case must rest upon its own peculiar facts and circumstances. We have often said that mere delay in the assertion of a right, without more, does not in itself constitute laches, though long delay is strong evidence of acquiescence. Following the analogies of the law as to the statute of limitations, complainant's claim for damages on account of fraudulent representations would have long since been barred. And such analogous rule is to be held

294

applicable unless sufficient excuse is shown for the long delay.

■ The question of laches was very fully discussed in our recent case of Dunn v. Ponceler, 178 So. 40,[1] and needs no reiteration here. As observed in that authority (page 46), "What will be regarded as a sufficient excuse depends upon the circumstances of the case."

Complainant offers as his excuse for long delay by averring he promptly complained to the vendor upon the loss of the water, and was requested by him to wait upon an adjustment of the matter, that it would be properly adjusted; repeatedly thereafter, and at many different times, he appealed to the vendor to make settlement on account of the loss, and the vendor from year to year would put him off, but without demanding payment of any principal installment, and with little interest payment, and that his continued promises to make adjustment kept complainant from attempting a legal adjustment in the courts.

■ In Mortgage Bond Co. v. Carter, 230 Ala. 387, 161 So. 448, we had occasion to review some of our authorities touching this character of excuse, and the conclusion reached that delay due to promises of the vendor to make an adjustment, and the continued effort of the parties to reach an amicable settlement, was not such as to constitute laches and present a bar to relief in the courts.

■ The bill discloses that the long delay was thus occasioned by the vendor's repeated promises, and that complainant was thus for a long time lulled into inaction. Nor does it appear the rights of any third person have been prejudiced thereby. And it must be borne in mind also that all of these matters are to be considered in connection with complainant's exercise of his equity of redemption and as incidental thereto. The objection to the bill as for laches is also without merit.

We have here considered the salient questions argued on this appeal, and reach the conclusion that the demurrer to the bill was improperly sustained.

The decree will accordingly be here reversed.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.

