254 So.2d 328

**SCHOLZ HOMES, INC., a Corp.**

**v.**

**William J. HOOPER and Gwendolyn R. Hooper.**

**I Div. 651.**

Supreme Court of Alabama.

Nov. 4, 1971.

John V. Duck, Fairhope, for appellant.

Wilson Hayes, Bay Minette, for appellees.

SIMPSON, Justice.

This is an appeal by Scholz Homes, Inc., a corporation, from a judgment of the Circuit Court of Baldwin County against it and in favor of William J. Hooper and Gwendolyn Hooper in the sum of $13,500. The judgment followed a jury verdict in like amount. There was no motion for a new trial. The appellant assigns as error two actions of the trial court.

The first error assigned is that the court erred in refusing to give appellant's requested written charge Number One which was as follows:

"I charge you Gentlemen of the Jury that any statements made by Dan White must have been to a material fact which was then existing at the time of the making of the said statement, and that if it was not a material fact at the time that the statements were made, then you cannot find for the Plaintiff under the Bill of Complaint."

The second error assigned is that the court erred in refusing to give appellant's requested written charge Number 1–A which is as follows:

"The Court charges you Gentlemen of the Jury that if you believe the evidence in this case, you must find for the Defendant."

We will treat these assignments in inverse order. The complaint consisted of three counts as follows:

"1.

"The Plaintiffs claim of the Defendant NINETEEN–THOUSAND NINE–HUNDRED EIGHTY–NINE AND TWENTY–SIX/100 ($19,989.26) DOLLARS damages, for that on to-wit: the 4th day of February, 1969 the Defendant represented to Plaintiffs that the cost of a certain home, viz, Defendant's House Plan known as Meadow Branch Inline Plan #51023 was the sum of FORTY–SEVEN–THOUSAND SIX–HUNDRED and NO/100 ($47,600.00) DOLLARS.

"That Plaintiffs were thereby induced to purchase certain materials from Defendant for the construction of a home of the value of TWENTY–TWO–THOUSAND SIX–HUNDRED EIGHTY–EIGHT and SIXTY ONE/100 ($22,688.61) DOLLARS and to incur expenses for the construction of such home.

"That said representation [sic] were false and were known to Defendant at the time they were made to be false and were made with the intent to deceive Plaintiffs.

"That the Plaintiffs purchased the said materials from Defendant, that they engaged a Contractor approved by Defendant, that they performed all matters as di-

rected and suggested by Defendant and employed Defendant's Engineer and Consultant for the purpose of building said home and that the cost of building the said home exceeded SIXTY–SEVEN–THOUSAND SEVEN–HUNDRED EIGHTY–NINE and TWENTY–SIX/100 ($67,789.-26) DOLLARS, all to the damage of Plaintiffs.

"2.

"The Plaintiffs claim of the Defendant NINETEEN–THOUSAND NINE–HUNDRED EIGHTY–NINE and TWENTY–SIX/100 ($19,989.26) dollars damages, for that on to-wit the 4th day of February, 1969 the Defendant acting by and through its agent, servant or employee was then and there acting in the line and scope of his employment represented to the Plaintiffs that a certain home, viz, Defendant's House Plan known as Meadow Branch Inline Plan #51023 was the sum of FORTY–SEVEN–THOUSAND SIX–HUNDRED and NO/100 ($47,600.00) DOLLARS.

"That Plaintiffs were thereby induced to purchase certain materials from Defendant for the construction of a home of the value of TWENTY–TWO–THOUSAND SIX–HUNDRED EIGHTY–EIGHT and SIXTY–ONE/100 ($22,688.61) DOLLARS and to incur expenses for the construction of such home.

"That said representation [sic] were false and were known to Defendant at the time they were made to be false and were made with the intent to deceive Plaintiffs.

"That the Plaintiffs purchased the said materials from Defendant, that they engaged a Contractor approved by Defendant, that they performed all matters as directed and suggested by Defendant and employed Defendant's Engineer and Consultant for the purpose of building said home and that the cost of building the said home exceeded SIXTY–SEVEN–THOU-SAND SEVEN–HUNDRED EIGHTY–

NINE and TWENTY–SIX/100 ($67,789.-26) DOLLARS, ALL TO THE DAMAGE OF PLAINTIFFS.

"3.

"The Plaintiffs claim of the Defendant the sum of NINETEEN–THOUSAND NINE–HUNDRED EIGHTY–NINE and TWENTY–SIX/100 ($19,989.26) DOLLARS damages, for that on to-wit: the 4th day of February, 1969 and on divers days before and after that date the Defendant represented to Plaintiffs that the cost of a certain home, viz, Defendant's House Plan known as Meadow Branch Inline plan #51023 was the sum of FORTY–SEVEN–THOUSAND SIX–HUNDRED and NO/100 ($47,600.00) DOLLARS.

"That the said representation was made to induce Plaintiffs to purchase certain materials for the construction of a home; that the representations were false, that they were made wilfully to deceive, or recklessly without knowledge, and that such representations were relied upon by Plaintiff and acted upon in that Plaintiffs purchased materials for the building of a home from Defendant and that the said home exceeded in costs the amount represented by Defendant, all to the damage of Plaintiffs."

After filing demurrers, which are of no concern to us as this record does not show action taken on them nor are errors assigned pertaining to them, the defendant plead not guilty to each count of the complaint and the case proceeded to trial resulting in the judgment above set forth.

There being no motion for a new trial we will limit our review of the evidence to that introduced in proof of the averments of the complaint, in order to determine whether or not under the scintilla rule a jury question was presented. If so, and if the complaint stated a cause of action, the trial court did not err in refusing the general charge requested by the defendant.

A study of the evidence reveals testimony of witnesses favorable to the plaintiffs substantially as follows:

Scholz was in the business of selling packaged or prefabricated homes. The Hoopers, having seen a magazine advertisement of their product, ordered a brochure from them. This was followed by a personal call from Don White, a representative of the company, for a discussion of the various house plans available in package forms from Scholz. The first visit was followed by others. Various floor plans were discussed as was the fact that they were not inflexible. The Hoopers worked up one floor plan and inquired of White what it would cost. When advised that the total cost would be $53,000 they replied that they could not build that much house because of its cost. They, the Hoopers, then worked up another and more modest plan using features they were told by White were available from Scholz. After this plan was submitted to White, he delivered to them the following instrument, typewritten on the stationery of the company:

"Distinction of Design
"Standard of Quality
"SCHOLZ HOMES, Inc.

2001 North Westwood—
Toledo, Ohio  43607—
Area Code 419:  531–1601

"Dan White dist, sales mgr,
554 east call
Tallahassee Fla.

"CONTRACT ESTIMATE
"FOR HOUSE PLAN KNOWN AS MEADOW BROOK INLINE.  PLAN #51023  Approximately 3700 Sq, feet of heated area, 484 sq, feet.  GAR.

"According to plans and spec, $47,600.00 home to be built

In 120 days from the date of approval. The said house to be built in accordance with the custum [sic] and fame design of Scholz Homes Inc.  The contractor must be approved by Scholz Homes and The purchaser.

"Dan White"

This written statement was in confirmation of an oral one in which White said to Hooper, "This house will cost you $47,600." White had represented himself as being experienced in the construction business and knew it in and out.

The Hoopers and the salesman for the company then called a local contractor concerning the actual building of the house, using the "package" of Scholz. The contractor stated that he thought the total cost would be over $60,000 but the representative of the company still insisted it would not be over $47,600 if done on a cost plus 10 percent profit basis; that the difference between the contractor's estimate and that of the company resulted from the techniques of construction by using the packaged form which would save the difference. The contractor was awarded the contract to build on a cost plus basis, the Hoopers ordered and paid for the "package" which cost $22,686.80. The "package" was shipped to the construction site, the contractor began and completed the building of the house and the Hoopers wound up with a total bill of $67,789. The Hoopers wrote to the home office of Scholz concerning the excess in cost over the assurances of their representative and received the following letter in reply:

"Distinction of Design
"SCHOLZ HOMES, INC.          Standard of Quality
2001 North Westwood, Toledo, Ohio
43607.   Area Code 419:  531–1601
"September 12, 1969
"Mr. William H. Hooper, D.M.D.
112 West Third Street,
Bay Minette, Alabama   36507

"Dear Mr. Hooper:

"We have your letter of September 2 and were pleased to read that you love your house, but distressed to realize the gross misunderstanding in the area of responsibilities in building your home.

"We market our homes through builders, and we sold our package for your home to Roberson Construction Company, who as builders would complete your home, and in fact, enter into a contract

with you to build it. A copy of our Warranty Registration form is enclosed. This is the form you signed which indicates that the Warranty Form we extended on the materials we supply goes to you as the original home buyer as per the contract you have with Roberson Construction Company. I am also enclosing a copy of our published list of materials included in the Scholz Package which is sold to the builder. This, plus the Order Form, which the builder signed, represents the extent of the materials that are to be supplied by us.

"Actually, all of the items you mentioned in your letter which would indeed, represent a part of the total building contract, would have to be supplied by the builder and not by Scholz Homes. If this was not made clear to you, it could well represent one of the reasons that Mr. Dan White is no longer associated with our Company. Mr. White, on the other hand, could ·also have been acting as laison [sic] between you and the builder, but all the items discussed, of course would be reflected in the final total contract that the builder entered into with you.

"Since what Scholz Homes supplies, in addition to the architectural and engineering service represents only about thirty per cent of the entire house, we must, of necessity, market our homes through a builder who takes the contract with the home owner for the complete home.

"Knowing the model you chose and from what you, yourself, implied in your letter, I am sure that you have a beautiful home and that the full value is reflected in the contract price. You have a home of exceptional design and high quality, which deserves above normal evaluation, contrary to what the local Savings & Loan indicated to you.

"I certainly hope your builder can work out your contract to your total satisfaction, and that you will enjoy many happy years in your new home.

"Yours truly,
"SCHOLZ HOMES, INC.
"s/ James G. Lyons
Sales Administrator
"JGL: jc.
"Encls.
"CC  Roberson Construction
Route Two—Box 310
Bay Minette, Alabama  36507
Mr. Robert Bales
Regional Sales Manager
Scholz Homes, Inc.
Post Offive Box 45094 AMFMA
Atlanta, Georgia."

There was also evidence that the Hoopers were unsophisticated as to building costs and methods and relied heavily on the statements made by Scholz acting through their agents that the cost of the completed house would not exceed the sum of $47,600. Matching the above outlined evidence against the allegations of the complaint as above set forth it appears that the requirements of the scintilla rule have been more than met and that the court did not err in refusing the general charge because of lack of proof.

The statement in the home office letter that the items furnished by Scholz, in addition to architectural and engineering service normally represents only thirty per cent of the entire cost would certainly justify the jury in finding willful misrepresentation on the part of their agent when he stated that the cost of the house would not exceed $47,600, having before him a contract price for the Scholz items in the amount of $22,686.80.

The appellant's main argument is that the statements made by White that the cost of the house *was* $47,600 could not have been a false statement because the house had not been built and no one could know what the cost would be in view of the fact that the erection was done on a cost plus basis. The appellant further reasons that because of the above fact the plaintiffs failed to prove the allegations of their complaint and that such failure entitled the defendant to the affirmative charge. We

see the point but we do not think it has merit and is a matter of semantics rather than substance. It is clear to us from the allegations of the complaint that the word "was" was used in the sense of "would be" or "will be". All knew that the sale of the "package" pertained to a house yet to be built rather than one already built. We are cited by the appellant the case of Birmingham Broadcasting Company v. Bell, 259 Ala. 656, 68 So.2d 314, and to §§ 108 and 110 of Title 7, Code of Alabama as recompiled in 1958 as authority for the proposition that deceit must be based on a material fact then in existence at the time misrepresentations are made. We do not find Birmingham Broadcasting Co. v. Bell apt authority under the pleadings and proof in the present case. In that case there was no allegation of intentional deception or that the facts represented were better known to one party than to the other. We consider the case of Shepherd v. Kendrick, 236 Ala. 289, 181 So. 782 more pertinent to our consideration. There we find quoted with approval language from Kefuss v. Whitley, 220 Mich. 67, 189 N.W. 76, which is as follows:

" 'It is material to observe that it is often fallaciously assumed that a statement of opinion cannot involve the statement of a fact. * * * If the facts are not equally known to both sides, then a statement of opinion by the one who knows the facts best involves very often a statement of a material fact, for he impliedly states that he knows facts which justify his opinion.' "

Quoting further from Shepherd v. Kendrick, we find:

" 'If one makes a statement regarding an event to take place in the future, obviously the statement should ordinarily be regarded merely as an expression of opinion, and the courts will frequently stop at this point and hold that such a statement cannot serve as a basis on which to predicate fraud. But if there are circumstances tending to show an actual fraudulent intent at the time the promise or representation regarding a future event is made, then the situation is entirely changed. According to the weight of authority, if the person making the promise of statement as to a future event is guilty of an actual fraudulent intent, and makes the promise or misrepresentation with the intention of deceiving and defrauding the other party, and accomplishes this result, to the latter's injury, fraud may, under many circumstances, be predicated thereon, notwithstanding the future nature of the representations. This result is reached frequently on the theory that a person's intention or belief is a matter of fact, and that, therefore, if a misrepresentation is made with regard to the same, the misrepresentation is one of fact. But the particular circumstances determine largely the result in this class of cases. This seems to be true, partly, at least, for the reason that the questions whether a representation should be regarded as a mere expression of opinion, and whether one to whom it is made ordinarily does and has a right to rely thereon, depend on the nature of the representation and the relation of the parties.' "

■ From the foregoing we are persuaded that the proof of the allegations in the complaint was sufficient to present a jury question. We do not find reversible error in assignment of error number two and will now proceed to consider the other assignment of error which is based on the refusal of the trial court to give the requested special charge which is set forth above.

■ Charge one was properly refused as it would, if given, tend to mislead the jury. It cannot be the law in such cases that every statement made by the seller or his agent must relate to a material fact. For example had the salesman White remarked that it was a pleasant day, the effect of the requested charge literally con-

**634**

strued would require the jury to find for the defendant unless such remark pertained to a material fact. Charge one is also defective as being abstract and not properly hypothesized on the evidence.

The judgment of the trial court is due to be affirmed.

Affirmed.

HEFLIN, C. J., and COLEMAN, BLOODWORTH, and McCALL, JJ., concur.