281 So.2d 261

Albert F. RINGER and Helen
Ruth Ringer

v.

The FIRST NATIONAL BANK OF STEVEN-
SON, Alabama, a National Banking
Association.

SC 260.

Supreme Court of Alabama.

Aug. 2, 1973.

Potts & Young, R. Powell Duska, Florence, Thomas & Proctor, Scottsboro, for appellants.

Dawson, McGinty & Livingston, Scottsboro, for appellee.

HEFLIN, Chief Justice.

This is an appeal from an order granting a nonsuit entered by the Circuit Court of

Jackson County. The plaintiffs-appellants Albert and Helen Ringer (Ringers) bring the appeal because of adverse rulings of the trial court in sustaining demurrers of the defendant-appellee First National Bank of Stevenson (Bank) to each count of the complaint as last amended. The complaint, which contained three counts, is predicated on theories of misrepresentation, fraud, and deceit made actionable by Title 7, Sections 107–112, Code of Alabama, 1940, as amended (Recompiled 1958).

Common allegations appear in all counts of the complaint, which in abbreviated form follow: On May 9, 1966, the Ringers borrowed $20,000 from the Bank with which to purchase a bulldozer and related equipment (all of which may hereinafter be called "equipment") and to secure such loan the Ringers gave the Bank a combination promissory note and chattel mortgage having a due date of November 9, 1966, plus a real estate mortgage on three acres of land upon which the Ringers' home was located. Prior to and following the date of the transaction the Ringers did business with the Bank and, being persons with little experience in banking or financial matters, relied on the Bank for financial advice. A close personal and confidential relationship with the president of the Bank existed. In September of 1966 the Ringers requested the Bank to accept T. K. Stewart as the purchaser of the equipment and, without making an investigation of the credit reputation of Mr. Stewart, the Bank arbitrarily refused to allow him to assume the Ringers' obligations to the Bank, but instead, fraudulently represented to the Ringers that Millard Bowen and Thomas D. Bowen would be better and more dependable buyers for the equipment than would T. K. Stewart and that such representation was false. Relying on this misrepresentation of this material fact by the Bank, the Ringers sold the equipment to the Bowens and allowed the Bowens to assume the Ringers' obligations to the Bank under an assumption agreement by which the Bowens agreed to pay to the Bank not less than $500.00 each month. In accepting the assumption agreement the Bank required that the three acres of the Ringers remain as security for the loan. On numerous occasions after said assumption by the Bowens and before January, 1969, the Ringers were informed by the president of the Bank that the Bowens were making the agreed payments, when, in fact, the Bowens were not making such payments. Such representation of this material fact was fraudulently made to the Ringers. The chattel mortgage on the equipment and the real estate mortgage on the three acres were both foreclosed by the Bank, all to the damage of the Ringers.

Count 2 is essentially the same as Count 1 except that both compensatory and punitive damages are claimed since the misrepresentations were allegedly made "grossly, maliciously, oppressively and with an intent to deceive."

Count 3 differs from Count 1 by alleging a fiduciary relationship between the Bank and the Ringers; the concealment of the fact that no credit-check had been made on the Bowens by the Bank; and that prior to the sale of the equipment neither of the Bowens had borrowed more than $400.00 at any one time from the Bank.

Each count alleges two acts deemed fraudulent: (1) A misrepresentation by the Bank that the Bowens would be better and more dependable buyers of the equipment than would T. K. Stewart; (2) a misrepresentation of the fact that the Bowens were making regular payments on the assumed note, when they were not.

■ When fraud is pleaded, either at law or equity, the facts out of which it is supposed to arise must be stated. Crommelin v. Capitol Broadcasting Co., 280 Ala. 472, 195 So.2d 524 (1967). This court has stated that allegations of fraud in a pleading to be sufficient must positively set forth facts constituting the fraud, so that the court can clearly see that fraud has intervened. Pihakis v. Cottrell, 286 Ala. 579, 243 So.2d 685 (1971); Lacey v. Edmunds Motor Co., 269 Ala. 398, 113 So.2d 507 (1959).

The first issue that needs to be resolved is whether the Ringers properly alleged a representation as to the Bowens' financial condition and, if so, whether it is an actionable misrepresentation or merely an expression of opinion which is not actionable. The pertinent allegations follow:

". . . [T]hat said promissory note by its terms was not due until November 9, 1966; that prior to September, 1966, plaintiffs decided to sell the bulldozer and related equipment, if possible, and thereafter negotiated a sale of the bulldozer and related equipment to T. K. Stewart, a man with an excellent credit reputation and substantial assets; that plaintiffs requested defendant to accept T. K. Stewart as a purchaser of the bulldozer and related equipment; that defendant made no investigation to determine the credit reputation of T. K. Stewart, which investigation if made would have revealed T. K. Stewart to have a very good credit reputation; that defendant arbitrarily refused to accept T. K. Stewart as a purchaser of the bulldozer and related equipment and arbitrarily refused to allow him to assume plaintiffs' obligations under said promissory note and chattel mortgage, but instead wilfully to deceive, or recklessly without knowledge, or by mistake and innocently represented to plaintiffs that Millard Bowen and Thomas D. Bowen would be better and more dependable buyers for the bulldozer and related equipment than would the said T. K. Stewart; that such representation was false; that acting in reliance on this misrepresentation of a material fact by defendant, plaintiffs in to-wit, September, 1966, allowed Millard Bowen and Thomas D. Bowen to assume plaintiffs' obligations under said note and chattel mortgage . . . ."

The Bank asserts the representation that the Bowens would be better and more dependable buyers does not constitute actionable fraud since the representation was not that the Bowens were financially sound, but merely that they were better and more dependable. The Bank ignores the fact that "better and more dependable" describes the Bowens as "buyers," and that the allegation also states, "would be better and more dependable buyers . . . than would said T. K. Stewart," a buyer alleged by the Ringers as having an excellent credit reputation. The Bank overlooks the allegation that the defendant arbitrarily refused to allow Stewart, a man with substantial assets, to assume the plaintiffs' obligations under the promissory note. The comparison in this instance doesn't detract from a representation of financial soundness but rather enhances it. In the context of the alleged situation, where the Ringers produced a buyer alleged to be credit-worthy, a representation that another is a "better and more dependable buyer" (thus a better person to assume the obligation to the Bank than a person with substantial assets and an excellent credit reputation—T. K. Stewart) can be looked upon from a pleading viewpoint as sufficient for a jury submission on this issue of whether a representation of financial status was made, provided, of course, the proof supports the allegations.

Assuming that "better and more dependable buyer" refers to the Bowens' financial status, is it a representation such that, if false, it would give rise to an actionable fraud? The general rule is stated in 37 Am.Jur.2d, § 137, at 187:

"It is well settled that where the other requisite elements of actionable fraud are present, false and fraudulent representations made to one contemplating business transactions or negotiations with a third person, concerning the financial status, solvency, or credit of such third person, constitute misrepresentations which may form the basis for actionable fraud. While one of whom inquiries as to the financial standing or reputation of a third person are made has his option to answer or not and may refuse to give any information on the subject, yet if he undertakes to do so, he

must answer according to the truth as far as he knows."

See also Annotation: Misrepresentations as to financial condition or credit of third persons as actionable by one extending credit in reliance thereon. 32 A.L.R.2d 184.

Under Alabama law a misrepresentation of financial condition can be actionable. The controlling Alabama case is Einstein, Hirsch & Co. v. Marshall & Conley, 58 Ala. 153 (1877). In that case, the defendant-appellant firm of Einstein, Hirsch & Co. provided one Heller a letter which stated in part: "He is good for all he buys, and you may safely sell him a bill [bill meaning a bill of groceries]." Based on this representation, Marshall & Conley extended credit to Heller, who subsequently died leaving the bill unpaid and leaving no property with which to satisfy his debts. Although a judgment for Marshall & Conley was reversed on other grounds, the court found that a good cause of action was stated. Referring to the requisites of such a cause, the court stated:

"An unbending rule can not be laid down for all cases, where, upon the representations of an uninterested person, one trusts another, and suffers loss. Much must depend on the circumstances of the particular case. But when, as in this case, the person recommending knows that the object of the party procuring the recommendation is to obtain credit at a distance; knows that the proposed seller is unacquainted with the financial condition and credit of the proposed buyer, the law, in harmony with good morals and good neighborhood, requires that the same shall be faithfully and truthfully given. A representation, as fact, of that which the party knows to be false; or, of that, of the truth of which he has no knowledge or well-founded belief, falls below the standard of legal requirement. And if it turn out in fact that the representation is false, and the seller is deceived and suffers loss in consequence of the sale he made on the strength of it, the party recommending must make good the loss. . . ."

As this court stated in *Einstein,* "[m]uch must depend on the circumstances of the particular case," but it seems clear that under the proper circumstances a third party can be held liable for misrepresenting another party's financial condition. But the rule is not without qualification. There is the limitation that the statement must be reasonably certain and definite and more than mere expressions of opinions or prophecy or statements to eventuate in the future. See 37 Am.Jur.2d, § 137, at 188–189; 37 C.J.S. Fraud § 48, at 301 and 48 A.L.R. 546–549.

The Bank here claims that "would be better and more dependable buyers" was a mere expression of opinion or prophecy. The following language from 51 A.L.R. 63 is quoted with approval in Shepherd v. Kendrick, 236 Ala. 289, 181 So. 782 (1938):

" 'If one makes a statement regarding an event to take place in the future, obviously the statement should ordinarily be regarded merely as an expression of opinion, and the courts will frequently stop at this point and hold that such a statement cannot serve as a basis on which to predicate fraud. But if there are circumstances tending to show an actual fraudulent intent at the time the promise or representation regarding a future event is made, then the situation is entirely changed. According to the weight of authority, if the person making the promise of statement as to a future event is guilty of an actual fraudulent intent, and makes the promise or misrepresentation with the intention of deceiving and defrauding the other party, and accomplishes this result, to the latter's injury, fraud may, under many circumstances, be predicated thereon, notwithstanding the future nature of the representations. This result is reached frequently on the theory that a person's intention or belief is a matter of fact,

and that, therefore, if a misrepresentation is made with regard to the same, the misrepresentation is one of fact. But the particular circumstances determine largely the result in this class of cases. This seems to be true, partly, at least, for the reason that the questions whether a representation should be regarded as a mere expression of opinion, and whether one to whom it is made ordinarily does and has a right to rely thereon, depend on the nature of the representation and the relation of the parties.' "

In the case of Scholz Homes, Inc. v. Hooper, 287 Ala. 628, 254 So.2d 328 (1971), this court held that under some conditions, a representation of an opinion or a prediction of a future event can be an actionable fraud, but such opinions or predictions are not actionable unless "there are circumstances tending to show an actual fraudulent intent at the time of the promise or representation" is made.

While inferences could be drawn from the allegations of each count that the Bank also relied on the opinion that the Bowens were dependable buyers (thus possibly indicating an absence of fraudulent intent), there are allegations in each count to satisfy the requirement that the expression of opinion was made with an actual fraudulent intent at the time the prediction of future financial dependability was made. Allegations follow the language of the involved statutes. Counts 1 and 3 allege that the misrepresentations were made wilfully to deceive and Count 2 contains the allegation of an intent to deceive, as well as that the misrepresentations were made grossly, maliciously, and oppressively.

In connection with the second allegation of fraud, the essential allegations are as follows:

". . . [T]hat on numerous occasions after to-wit, September 13, 1966, and before to-wit, January, 1969, plaintiffs asked C. H. Woodall, the president of defendant, if Millard Bowen and Thomas D. Bowen were making the payments of $500.00 per month to the bank as they had agreed, and upon each such inquiry C. H. Woodall as the agent, servant or employee of the defendant, then and there acting within the line and scope of his said employment, wilfully to deceive, or recklessly without knowledge, or by mistake and innocently represented to the plaintiffs that the payments were being made by Millard Bowen and Thomas D. Bowen as promised; that this misrepresentation of a material fact was false and that in fact the said Bowens were continuously in default on their obligations under the assumption agreement from, to-wit, December 1966, to, to-wit, May 1969, when the chattel mortgage on the bulldozer and related equipment was foreclosed  . . . ."

In contending that the Bank president's conduct in making the misrepresentation was not actionable, the Bank's primary argument is that the Ringers in the note waived notice pertaining to an extension of time concerning payments which the Bank might grant to the Bowens. The court considers that any such waiver would be immaterial under the facts alleged. Put simply, the Bank's contention is since it was not required to give any notice of any extension of time concerning payments that it granted to the Bowens, it could give misinformation with impunity. Such a contention is patently untenable.

Clearly, proof of the facts alleged by the Ringers regarding a misrepresentation by the Bank president that payments were being made when, in fact, they were not, would permit a recovery under the fraud and deceit statutes of this state.

The third major point argued to this court concerns the allegation of damages. It is well settled that damage is an essential element of an action for fraud and deceit. Maring-Crawford Motor Co. v. Smith, 285 Ala. 477, 233 So.2d 484 (1970). In a recent case this court sum-

marized the subject of damages in a fraud and deceit action:

"The rules in Alabama appear to be as follows:

"To recover compensatory damages for fraud and deceit, plaintiff must show that he has suffered an actual pecuniary loss as the result of the fraud.

"To recover punitive damages for fraud and deceit, plaintiff must show that the fraud is of the character described in Alabama Great Southern Railway Co. v. Sellers, supra [93 Ala. 9, 9 So. 375: 'acts . . . which involve malice, wilfulness or wanton and reckless disregard of the rights of others'], as justifying punitive damages, and that plaintiff has suffered actual damages as the proximate result of the fraud; but, as the terms actual and nominal are here used, nominal damages are actual damages, and punitive damages may be awarded although plaintiff's actual damage is purely nominal."

Pihakis v. Cottrell, 286 Ala. 579, 243 So. 2d 685 (1971)

In each count the Ringers claim compensatory damages as a proximate result of the alleged fraud, and in Count 2 the Ringers claim punitive damages after alleging that the fraudulent misrepresentations were made "grossly, maliciously, oppressively, and with an intent to deceive . . . ." It appears that more than nominal damages are alleged. If the representations of the Bank had been true, the Ringers' position is that they would not have suffered the financial losses they allege. They contend there would have been no foreclosure or loss to them; but there can be little doubt that the Ringers were obligated to pay considerable more interest than they would have been if the delay of 29 months had not occurred during which time it is alleged the Bank was falsely misrepresenting to them that payments were being made by the Bowens.

■ Finally with respect to damages a demurrer was not the proper method of attacking the plaintiff's allegation of damages since the complaint states a cause of action. It is well settled that demurrer is not the proper method to test its sufficiency with respect to measures or elements of damage claimed, the remedy being by motion to strike, objection to evidence or request for instructions to the jury. Dalrymple v. Alabama Farm Bureau Mutual Ins. Co., 267 Ala. 416, 103 So.2d 711 (1958); Lurie v. Kegan-Grace Co., 209 Ala. 339, 96 So. 344 (1923).

■ The Bank further argues "that the basic concept of a fraud involves violation of a legal or equitable duty," and the Ringers do not allege facts "which would support a violation of a duty . . . ." It is fundamental that all persons are under a duty not to fraudulently misrepresent material facts to persons with whom they have business dealings. The Restatement of Torts, Section 525, states:

"One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or refrain from action in reliance thereon in a business transaction is liable to the other for the harm caused to him by his justifiable reliance upon the misrepresentation."

The counts allege business transactions, and one of the counts alleges a fiduciary relationship between the Bank and the Ringers. The contention that the Bank had no duty toward the Ringers is without merit.

Each count of the complaint endeavors to allege two separate torts on the part of the defendant: (1) A fraudulent misrepresentation of the financial condition of the Bowens; and (2) a fraudulent misrepresentation of the fact that payments were being made by the Bowens when, in fact, they were not. None of the grounds of the demurrer raises the issue of duplicity, therefore, this court sees no point in discuss-

ing that problem. However, it would be appropriate to comment that this technicality of common law pleading is eliminated by the new Alabama Rules of Civil Procedure.

This court finds the counts of the complaint are sufficient to withstand the attack of the grounds of the demurrer interposed and that the cause should be returned to the trial court for further proceedings.

Reversed and remanded.

MERRILL, HARWOOD, BLOODWORTH and MADDOX, JJ., concur.