This is an appeal by the plaintiffs from an order granting a new trial unless the plaintiffs filed a remittitur of $460,000.00 from a jury verdict of $500,000.00. In addition, both defendants filed cross-appeals. We reverse.
The undisputed facts show that on June 6, 1982, Billy Ray Harmon wished to purchase a vehicle from Cooper Chevrolet and went with his father-in-law, Edward O. Whaley, to Cooper Chevrolet to discuss a purchase. Whaley accompanied Harmon in order to co-sign a note for the purchase. On June 8, 1982, after credit references were checked, an automobile was purchased in Whaley's name and insurance was applied for in Whaley's name. Both plaintiffs testified that the car salesman told them they needed to put the vehicle in Whaley's name for insurance purposes because Cooper Chevrolet could not sell or write insurance on a person who did not have a driver's license, which Harmon did not have. Plaintiffs assert that they would not have purchased the car if they had known that they could not acquire insurance on it. Cooper Chevrolet is an agent of Motors Insurance Corporation (MIC) for the purpose of selling insurance policies on behalf of MIC. The application for insurance was completed by the salesman because Whaley could not read or write except to sign his name. The application *Page 1372 
indicated that the vehicle was to be driven 100 percent of the time by Whaley. However, the salesman knew that Harmon was to be the principal driver. Harmon and Whaley testified that they relied on the representation of the salesman that the insurance would be good.
On June 9, 1982, MIC issued a policy based upon the information furnished by Cooper Chevrolet. An underwriting report and a motor vehicular report were requested by MIC on June 22, 1982. On the same day, MIC attempted to contact Whaley but could not reach him at the telephone number it had been given, and no number was listed for Whaley in the telephone directory. A notice was sent to Whaley that day informing him that MIC needed an underwriting report on him. On July 1, 1982, MIC received a report on Whaley and sent him a card requesting that he contact the MIC office. Two weeks later, after failing to receive a response, MIC mailed a notice of cancellation, to be effective at 12:01 a.m. on July 26, 1982. This cancellation was in accordance with the terms of the policy, which allowed cancellation within 60 days for any reason. Whaley contends that he did not get the cancellation notice or the card requesting that he contact MIC.
On July 28, 1982, Harmon was involved in a wreck that totally destroyed the car purchased in Whaley's name. It was at that time that the plaintiffs discovered the insurance had been cancelled and that MIC would not pay for the loss.
The issue upon which this case was tried was whether MIC and Cooper Chevrolet committed a legal fraud upon the plaintiffs. The jury found the defendants guilty of legal fraud and returned a verdict in the amount of $500,000. Both defendants filed motions for judgment notwithstanding the verdict and, alternatively, motions for a new trial. The trial court entered an order and opinion on August 23, 1984, which were amended to state essentially that the verdict of $500,000.00 against both defendants was so outrageous that it had to be the result of bias and passion on the part of the jury and that, unless the plaintiffs filed a remittitur of $460,000.00 within 30 days, a new trial would be granted. The plaintiffs did not file a remittitur, but rather gave notice of appeal from the order granting a new trial. Both defendants filed a motion to dismiss this appeal. The plaintiffs filed a motion to strike the motions to dismiss.
 Motion to Dismiss
MIC and Cooper Chevrolet contend that the order stating that unless a remittitur is filed a new trial will be granted is not an appealable order. We find the plaintiffs' filing of an appeal to be an indication of their rejection of the remittitur.
In Guilford v. Spartan Food Systems, Inc., 372 So.2d 7 (Ala. 1979), the plaintiff was given leave to amend his complaint within ten days of an order dismissing the complaint. The plaintiff failed to submit an amended complaint within the specified period, but filed his notice of appeal. No further order was entered dismissing the complaint. This Court held that "[h]is failure to submit the amended complaint within the specified period coupled with his filing an appeal is a sufficient manifestation of his intention to stand on his complaint." Guilford, supra, at 8.
It has been held that an order of the court reciting that unless the successful party filed a remittitur a new trial would be granted is not appealable. Orr v. Stewart, 17 Ala. App. 297,84 So. 555 (1919), cert. denied, 204 Ala. 700, 85 So. 923
(1920). However, that decision was issued long before the adoption of the Alabama Rules of Civil Procedure in 1973. The Committee Comment to Rule 58, A.R.Civ.P., "emphasizes the intention . . . to do away with unnecessary technicalities heretofore common in orders, judgments, and decrees." SeeGuilford, supra, at 9.
Because we consider the filing of the appeal to be an indication of the plaintiffs' intention to reject the remittitur, and because remanding for the lower court to enter an order granting a new trial would only delay a decision on the merits of this appeal, we now consider the merits. *Page 1373 
 Merits of Defendants' Contention as to Directed Verdict
Both MIC and Cooper Chevrolet argue that the trial court erred in not directing a verdict for them on the issue of fraud.
The standard of review for testing a motion for a directed verdict or a motion for a judgment notwithstanding the verdict is whether there is a scintilla of evidence to go to the jury.Gulf States Paper Corp. v. Hawkins, 444 So.2d 381 (Ala. 1983). This case was submitted to the jury under Ala. Code (1975), §6-5-101 and § 6-5-102. Section 6-5-101 provides:
 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
The essential elements of this cause of action are:
(1) a false representation;
(2) concerning a material fact;
(3) reliance upon the false representation, and;
(4) damage as a proximate result.
International Resorts, Inc. v. Lambert, 350 So.2d 391 (Ala. 1977); Nobility Homes, Inc. v. Ballentine, 386 So.2d 727 (Ala. 1980); Burroughs Corp. v. Hall Affiliates, Inc., 423 So.2d 1348
(Ala. 1982).
The evidence supports the trial court's submission of this case to the jury. There was evidence that Whaley and Harmon were told that it did not make any difference whether Harmon had a driver's license, since the insurance was in Whaley's name and the insurance was on a car and not an individual person. The representation that insurance could be issued concerned a fact material to the transaction, because Whaley testified that if he had known Harmon could not receive insurance he would not have purchased the car. The evidence suggests that Harmon and Whaley believed they could receive effective insurance if it was obtained in Whaley's name and agreed to purchase the car based upon the Cooper Chevrolet salesman's statements. The damages included loss of the car, loss of Harmon's job because of lack of transportation, and the expense of defending a law suit which was brought against both Harmon and Whaley for the indebtedness incurred in the purchase of the car, which both were unable to pay. Based upon the foregoing, the trial court was correct in not entering a directed verdict for MIC and Cooper Chevrolet.
MIC and Cooper Chevrolet also argue that if there was fraud the plaintiffs willingly participated in it, and, thus, that they cannot recover. The law is well settled that the question of whether a person so participated in a fraud as to preclude him from recovery is a jury question. National Life AccidentInsurance Co. v. Allen, 285 Ala. 551, 234 So.2d 567 (1970). This issue was properly presented to the jury, and the jury found that Harmon and Whaley did not participate in the fraud.
 Issue of Remittitur
The trial court did not set out the factors it considered in ordering a new trial unless the plaintiff filed a remittitur of $460,000. Therefore, we are unable to say whether the trial court erred on this issue. Today in Hammond v. City of Gadsden,493 So.2d 1374 (Ala. 1986), this Court has held that the trial court must enter an order stating its reasons for granting or denying motions of this kind. Therefore, the judgment of the trial court is reversed and the cause remanded for entry of an order consistent with the opinion in Hammond v. City ofGadsden.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur. *Page 1374