[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 229 
R. Scott Reynolds and Gregory Windham brought suit in the Circuit Court of Madison County against Joe C. Mitchell, Bobby R. Lewis, and Russell M. Fraser, all individually and as general partners of the Margaret Clara apartments complex. Richard Tichansky and Teresa Scholz also were initially named as defendants, but they were later realigned as plaintiffs. The plaintiffs alleged that the defendants made false representations that induced them to enter into a limited partnership; the plaintiffs also claimed that the defendants, by waste and mismanagement, breached their fiduciary duty of care as general partners. The plaintiffs later amended their complaint to add a claim based on false representations made by the general partners to further induce investment by the plaintiffs in the partnership, and a claim based on suppression of material facts. The jury awarded the plaintiffs $5,993.00 in compensatory damages, which was approximately 10% of their $59,925.00 investment, and awarded each plaintiff $7,500.00 in punitive damages, for a collective total of $30,000.00. Each defendant filed motions for J.N.O.V. and directed verdict and the plaintiffs filed a motion for new trial. All motions were denied. Plaintiffs — Reynolds, Tichansky, Scholz and Windham — then appealed and defendants Lewis and Fraser cross-appealed. Defendant Mitchell did not cross-appeal.
The defendants drew up the Margaret Clara limited partnership agreement, which named themselves as general partners. Plaintiffs and defendants were members of an investment club, and the defendants were officers of that club. A newsletter was sent to the plaintiffs, as members of the investment club, promoting the Margaret Clara venture. The letter had very positive financial projections for the venture, but the cover letter stated that the projections were based on "assumptions about circumstances and events that have not yet taken place and are subject to variations, and there is no assurance that the projected results will be achieved." These projections were developed from figures supplied by the general partners.
Based on the above mentioned financial projections and subsequent representations made by the defendants, the plaintiffs decided to invest in the project. The plaintiffs purchased shares in the limited partnership, as limited partners, by executing promissory notes and signing a partnership agreement.
The Margaret Clara apartment complex was purchased in June of 1983. After the limited partners made their investment in the apartments, more newsletters were sent by the defendants to the plaintiffs describing the Margaret Clara venture in highly positive terms and touting its 100% occupancy rate. The letters failed to mention that rents were not being collected on many of the apartments.
In 1984 the partnership began incurring indebtedness. The occupancy rates of the apartments dropped toward the end of 1984, and the partnership was unable to meet its mortgage payments. The limited partners were not informed of these facts. At one point the plaintiffs received a newsletter containing representations that the *Page 230 
Margaret Clara complex had been sold and that each of the partners would receive $15,000.00 in return. The sale never occurred, and the apartments were foreclosed upon without notice to the plaintiffs. During the operation of the Margaret Clara apartments, the limited partners continued to make some payments on the promissory notes that they had signed for their interest in the partnership.
 I
We will first address the issue raised by defendants Lewis and Fraser on their cross-appeal, that there was no basis for a finding of any kind of fraud on their part.
 A
Lewis and Fraser assert throughout their brief in support of their cross-appeal that the plaintiffs had to establish that some representation was made to them by Lewis and Fraser personally, in addition to those made by Mitchell, in order to establish a claim for fraud against them. Code 1975, § 10-8-53, provides that partners are liable for "any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership." Code 1975, § 10-9A-62 provides, "a general partner [of a limited partnership] shall have all the rights and powers and is subject to all the restrictions and liabilities of a partner in a partnership without limited partners. . . ." These two provisions, taken together, dictate that general partners in a limited partnership are liable for each other's actions taken in the ordinary course of the partnership's business. Therefore, Lewis and Fraser would at least be vicariously liable for the compensatory damages resulting from Mitchell's alleged misrepresentations made in regard to partnership business. See, Lichenstein v. Murphree, 62 So. 444, 9 Ala. App. 108 (1913); Orr, Jackson Co. v. Perry,16 Ala. App. 658, 81 So. 150 (1919).
 B
Lewis and Fraser made a motion for directed verdict specifically directed to the claim of fraud in the inducement; it was denied, and they made a motion for J.N.O.V. specifically directed toward that claim, which was also denied. They argue that these motions should have been granted. In order to establish that these motions should have been granted, Lewis and Fraser must show that the plaintiffs failed to produce any evidence of fraud or misrepresentation in the inducement of plaintiffs' agreement to purchase. Harmon v. Motors Ins. Corp.,493 So.2d 1370 (Ala. 1986); Upton v. Mississippi Valley TitleIns. Co., 469 So.2d 548 (Ala. 1985); A.T.F. Trucking Co. v.Fisher Bros. Sales, Inc., 498 So.2d 846 (Ala.Civ.App. 1986).
In an action for fraud, there must be a misrepresentation "of material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party" Code 1975, §6-5-101 (emphasis added); Earnest v. Pritchett-Moore, Inc.,401 So.2d 752 (Ala. 1981). As indicated by § 6-5-101, reliance is an essential element of a fraud action. Jordan v. Peckett, 78 Ala. 331
(1884). Lewis and Fraser claim that they, as general partners, did not make misrepresentations in the inducement and that there is no evidence that the plaintiffs, in deciding to purchase their shares, reasonably relied on any representations made by the defendants. However, the defendants did make various representations toward inducing the plaintiffs' purchase, and the plaintiffs claimed they relied on those representations.
First, the plaintiffs reviewed financial projections supplied by the defendants. The plaintiffs were aware of the facts that the financial projections were related to future events, that the financial projections were based on various assumptions, and that there was no guarantee that the projections would in fact be achieved. The agreement they signed stated that the plaintiffs were relying upon advice of their own professional tax, legal, and other business advisors in making their decision to enter into and execute this agreement.
Second, these financial projections were embellished by Mitchell; there was evidence that he made the statement that even if the apartments went into fore-closure, *Page 231 
the investors would still get a return of more than 30% on their investments. There was also evidence that Mitchell, as a general partner, also made oral representations that the apartments were a "cash flow machine" because the management would have no problem renting the apartments. However, when the apartments did go into foreclosure, the plaintiffs received nothing; in the end, the limited partners never received any "cash flow."
Third, the plaintiffs testified that because they did not know Mitchell, they relied on the fact that Lewis and Fraser signed, with Mitchell, a partnership agreement that provided that the three defendants would take full charge of the management, conduct, and operation of the partnership business. Lewis admitted that he never took part in the substantive management of the apartments and that he had never intended to take part.
The representations that the apartments would be financially successful could be considered simply statements of opinion. Normally, the courts will not allow a statement of opinion to be a basis on which to predicate a claim of fraud. However, if there is proof of actual fraudulent intent at the time the representation is made and the person succeeds in the deception and injury results, an action for fraud may be predicated on such a representation, notwithstanding the opinion nature of the representation. Shepherd v. Kendrick, 236 Ala. 289,181 So. 782 (1938); see also Army Aviation Center Federal Credit Unionv. Poston, 460 So.2d 139 (Ala. 1984); Clanton v. Bains Oil Co.,417 So.2d 149 (Ala. 1982); Birmingham Broadcasting Co. v. Bell,259 Ala. 656, 68 So.2d 314 (1953).
Where the representation of an opinion is involved, a person must prove not only that there was an intent to deceive, but also that his reliance was reasonable. See Bedwell Lumber, Inc.v. T T Corp., 386 So.2d 413 (Ala. 1980). In certain situations a person may reasonably rely on the representation of an opinion. For instance, where the facts are not equally known to both sides, a statement of opinion by the one who knows the facts better, often involves a statement of a material fact that justifies his opinion, Scholz Homes, Inc. v. Hooper,287 Ala. 628, 254 So.2d 328 (1971), quoting Keyfuss v. Whitley,220 Mich. 67, 189 N.W. 76 (1922); therefore, in such a situation, an action for fraud may be predicated on an opinion, depending on whether the reliance on the representation of the opinion is reasonable. Cf. Shepherd v. Kendrick, 236 Ala. 289, 181 So. 782
(1938); Scholz Homes, Inc. v. Hooper, 287 Ala. 628,254 So.2d 328 (1971).
To defeat the directed verdict and J.N.O.V. motions directed toward the claim of fraud in the inducement, the plaintiffs must have provided proof, first, that the defendants intended to deceive them and, second, that they reasonably relied on the defendants' representations involving opinions. Only a scintilla of evidence of these elements is needed to defeat the directed verdict and J.N.O.V. motions. See, Harmon v. MotorsIns. Corp., 493 So.2d 1370 (Ala. 1986); Upton v. MississippiValley Title Ins. Co., 469 So.2d 548 (Ala. 1985); A.T.F.Trucking Co. v. Fisher Bros. Sales, Inc., 498 So.2d 846
(Ala.Civ.App. 1986).
The plaintiffs contend that a scintilla of evidence that the defendants had intent to defraud can be inferred from the subsequent deterioration of the apartments, Mitchell's continued misrepresentation, and the disastrous financial results. Whether a fraudulent intent has been proven is a matter peculiarly within the province of the jury, where there is evidence of such an intent. State Farm Mut. Auto. Ins. Co.v. Borden, 371 So.2d 28 (Ala. 1979); Southeastern Properties,Inc. v. Lee, 368 So.2d 288, on remand, 368 So.2d 289
(Ala.Civ.App. 1979).
The plaintiffs argue that the failure of the apartments, coupled with the evidence that Mitchell misrepresented facts during the operation of the apartments, indicates that he was intentionally misrepresenting facts in the financial projections and that he was intentionally misrepresenting the facts when he more or less stated that the apartments would be a financial *Page 232 
success in any event. The evidence that more misrepresentations began immediately after the apartments began operation was sufficient for the jury to infer that the defendants had an intent to deceive when they made the initial misrepresentations that induced the plaintiffs' agreement to purchase.
Next, the plaintiffs contend that the financial projections and representations made by Mitchell were representations based on knowledge of underlying facts, and, therefore, that their reliance was reasonable even though the projections contained a disclaimer stating that the projections were based on assumptions of future events. There was evidence that the general partners were in a superior position of knowing facts that justified the financial projections that they submitted to the plaintiffs; therefore, the claim of fraud in the inducement could be predicated on these representations of future events.
In order to return the general verdict for the plaintiffs, it would have been necessary for the jury to have found fraud in the inducement. This is true because the misrepresentations made during the operation of the apartments, discussed in detail below, would not have been actionable without some injury; the injury alleged is that plaintiffs kept making payments during that time, when they would not have done so had they known the continuing representations were untrue — but the only basis on which plaintiffs would have had a right to stop making payments on their promissory notes was that the notes were subject to rescission as having been fraudulently induced. We assume that the jury made those factual findings necessary to support its verdict; therefore, we assume that the jury found fraud in the inducement. Thus, we must conclude that the court correctly denied the motions for directed verdict and for J.N.O.V.; those motions were properly denied if there was so much as a scintilla of evidence of fraud in the inducement, and plaintiff certainly presented more than a scintilla of such evidence.
 C
Lewis and Fraser also made directed verdict and J.N.O.V. motions specifically directed toward the plaintiffs' claim of fraud in the operation of the apartments. The trial court's denial of those motions should be upheld if there was presented any evidence of fraud or suppression of a material fact in regard to the operation of the apartments. Harmon v. MotorsIns. Corp., 493 So.2d 1370 (Ala. 1986); Upton v. MississippiValley Title Ins. Co., 469 So.2d 548 (Ala. 1985); A.T.F.Trucking Co. v. Fisher Bros. Sales, Inc., 498 So.2d 846
(Ala.Civ.App. 1986).
First, Lewis and Fraser assert that there is not a scintilla of evidence that the general partners misrepresented a material fact during the operation of the apartments. However, the record is replete with evidence of instances of misrepresentation. There was evidence that during the operation of the apartments, the general partners, acting through Mitchell, made these representations: that the apartments were 100% rented, when in reality some occupants were not paying the rents on the apartments; that there was an offer to buy the apartments, when in fact someone had merely expressed an interest in buying them; that the apartments had been sold and the partners would get a $15,000 return on their investment, when no sale ever occurred; and that all loans had been paid off, which Mitchell testified was probably not true. The plaintiffs were not informed that the partnership incurred indebtedness in 1984, and they were not informed of the foreclosure on the apartments. There was at least a scintilla of evidence to support a finding that the defendants did misrepresent a material fact.
Second, Lewis and Fraser claim that the representations made by them related to future events and to matters of opinions and would not support a fraud claim. See Coastal Concrete Co. v.Patterson, 503 So.2d 824, 826 (Ala. 1987). However, the statements that the apartments were 100% rented, that all loans had been paid, and that the apartments had been sold were *Page 233 
representations of fact and were not related to future events.
Third, Lewis and Fraser contend that there was no justifiable reliance, which is required in a claim of fraud by misrepresentation, because the plaintiffs had driven by and looked at the apartments regularly or could have done so. SeeCoastal Concrete Co. v. Patterson, 503 So.2d 824 (Ala. 1987). While a drive past the apartments might have enlightened the plaintiffs as to the physical condition of the buildings, it would certainly not have corrected the numerous misrepresentations described above. The plaintiffs' reliance was not made unreasonable simply because they could have driven by the apartments.
Finally, Lewis and Fraser claim that there was no reliance upon any misrepresentations made by the general partners that would cause the limited partners to pay additional sums. Lewis and Fraser contend that the plaintiffs were under a legal obligation to pay on the notes they signed prior to the operation of the Margaret Clara apartments by the partnership; therefore, they say, the plaintiffs' continued payment on the notes was not the result of detrimental reliance on the defendants' representations made during the operation of the partnership. Cf. Reeves v. Porter, 521 So.2d 963 (Ala. 1988);Ames v. Pardue, 389 So.2d 927 (Ala. 1980). However, if the defendants committed fraud in the inducement in order to get the plaintiffs to make the notes, the plaintiffs were not under a legal obligation to continue to pay the notes during the operation of the apartments. See, J.A. Fay Egan Co. v.Independent Lumber Co., 178 Ala. 166, 59 So. 470 (1912). Because the jury could have determined that there was fraud in the inducement, the jury could have also determined that the plaintiffs relied on the defendants' continuing fraud in the operation of the apartments in making further payments on the notes and that as a result they suffered damage. 37 Am.Jur.2dFraud and Deceit § 295 (1968) (one suffers damage where he is fraudulently induced to perform a contract that he has a legal right to rescind).
 D
The trial court properly denied the defendants' motions for J.N.O.V. and directed verdict, because both claims of fraud were supported by the evidence.
 II
The issue raised by the plaintiffs directly on appeal is whether their motion for new trial was due to be granted because the jury awarded compensatory damages in an amount entirely unsupported by the evidence. In an action based on fraud in the inducement of a purchase, the measure of damages is generally the difference between the value of the property as represented and its actual value. Larry Savage Chevrolet,Inc. v. Richards, 470 So.2d 1168 (Ala. 1985). For example, damages are measured in this way when a person is induced by fraud to purchase stock. Mobile Building Loan Ass'n v. Odom,232 Ala. 19, 166 So. 698 (1936). This measure essentially gives the person fraudulently induced into the purchase the "benefit of the bargain"; Alabama has long followed the "benefit of the bargain" rule. Stow v. Bozeman, 29 Ala. 397 (1856); Foster v.Kennedy, 38 Ala. 359, 81 Am.Dec. 56 (1862); Bessemer IceDelivery Co. v. Brannon, 35 So. 56, 138 Ala. 157 (1903); Lilesv. Pentecost, 213 Ala. 413, 105 So. 198, (1925); Boriss v.Edwards, 262 Ala. 172, 77 So.2d 909 (1954).
A jury may not award damages in an amount unsupported by the evidence. Deal v. Johnson, 362 So.2d 214 (Ala. 1978). Posey v.Myers, 370 So.2d 986 (Ala. 1979). The evidence indicates that the represented value of the plaintiffs' shares was at least what the plaintiffs paid for them: $59,925.00. There was no evidence that the defendants represented the plaintiffs' shares in the partnership to be worth any less than this amount. Therefore, the plaintiffs would be entitled to at least the amount paid for their partnership shares less the actual value of the shares (i.e., the represented value less actual value — the benefit of the bargain). The evidence of the actual value was that the plaintiffs *Page 234 
received for their partnership investment nothing more than tax benefits. If one assumes that the plaintiffs were in the 50% tax bracket the damages sustained would have still been substantially greater than the amount awarded by the jury. While there was evidence to the effect that the shares were represented to be worth more than the amount paid for them, there was no evidence that the amount represented was less than the amount paid for the shares. While there was evidence to support an award of compensatory damages, there was no evidence to support the amount awarded by the jury, and the motion for new trial was due to be granted.
The judgment is reversed and the cause is remanded for a new trial on the fraud claims. Rule 59(a), A.R.Civ.P.
REVERSED AND REMANDED.
MADDOX, JONES, SHORES and ADAMS, JJ., concur.