Edward HURYTA and Alexandria E.
Huryta, Plaintiffs,

v.

DIERS MOTOR CO. OF GRAND ISLAND,
NEBRASKA, a Nebraska Corporation,
and Clarence Pfeifer, also known as C. F.
Pfeifer, Defendants.

No. CV76–L–71.

United States District Court,
D. Nebraska.

Feb. 18, 1977.

John S. Mingus, Ravenna, Neb., for plaintiffs.

James A. Beltzer, Grand Island, Neb., for defendants.

## MEMORANDUM OF DECISION

URBOM, Chief Judge.

This case raises primarily the question of when a transferor of a motor vehicle "knows" that the odometer reading differs from the actual mileage within the meaning of 15 U.S.C. § 1988(b) and 49 C.F.R. § 580.4. The defendants sold to the plaintiffs a pickup truck which had been driven substantially more miles than showed on the odometer and gave to the plaintiffs an odometer certificate which recorded the odometer reading but did not show that the actual mileage was unknown. On the theory that the defendants knew of the incorrectness of the odometer reading and that there was an intent to defraud, the plaintiffs ask for damages under 15 U.S.C. § 1989, which gives to the court jurisdiction to resolve the controversy.

The facts are scarcely in dispute, except the inferences to be drawn. On April 13, 1974, Edward Huryta negotiated on behalf

of himself and his wife, Alexandria E. Huryta, the purchase from Diers Motor Co. in Grand Island, Nebraska, of a 1973 Chevrolet eight-cylinder, one-half ton pickup. Clarence Pfeifer was the salesman for Diers Motor Co. who made the sale. The odometer of the pickup stated that the mileage was 20,093, and at the time of the sale Pfeifer, on behalf of Diers Motor Co., gave to the Hurytas an odometer certificate which showed that the odometer mileage was 20,093. The space on the odometer certificate titled "True Mileage (if other than odometer mileage)" was left blank. Diers Motor Co. had purchased the pickup from Western Auto Buyers, Inc. in Omaha, Nebraska, on March 28, 1974, at which time it received an odometer certification which showed the odometer mileage to be 19,931 and showed "UNKNOWN" in the space titled "True Mileage (if other than odometer mileage)."

Shortly after Hurytas' purchase, the pickup began using a large amount of oil, and three overhauls at a reasonable cost of $302.75 were obtained at the plaintiffs' expense to correct the condition. Edward Huryta then conducted an investigation and discovered that the vehicle actually had traveled in excess of 60,000 miles before he had purchased it.

Documents show that Western Auto Buyers, Inc. bought the pickup from Denver Auto Auction on March 8, 1974, receiving an odometer certification that the odometer reading was 18,973 miles. Denver Auto Auction had purchased the vehicle on March 6, 1974, from "Stu" Emmert Chevrolet-Buick, Inc., receiving an assignment of title which showed the mileage to be 58,475.

Title 15 U.S.C. § 1989 permits recovery of damages by a purchaser against "[a]ny person who, with intent to defraud, violates any requirement imposed under this subchapter . . . ." The applicable requirement of the subchapter is 15 U.S.C. § 1988(b), which says:

"It shall be a violation of this section for any transferor to violate any rules [prescribed by the Secretary of Transportation requiring a transferor to give to a transferee disclosure of the cumulative mileage registered on the odometer and disclosure that the actual mileage is unknown, if the odometer reading is known to be different from the number of miles the vehicle has actually traveled] or to knowingly give a false statement to a transferee in making any disclosure required by such rules."

The Secretary of Transportation prescribed rules which, insofar as they are important in this action, are shown in 49 C.F.R. § 580.-4, as follows:

"(c) In addition to the information provided under paragraph (a) of this section [the odometer reading], if the transferor knows that the odometer reading differs from the number of miles the vehicle has actually traveled and that the difference is greater than that caused by odometer calibration error, he shall include a statement that the actual mileage is unknown."

If Diers Motor Co. "knew" that the odometer reading differed from the number of miles the vehicle actually had traveled and that the difference was greater than that caused by odometer calibration error, it violated § 1989 by failing to include a statement that the actual mileage was unknown.

■ The only evidence that Diers Motor Co. knew or had reason to believe that the mileage on the odometer was significantly in error was the fact that Diers Motor Co. had in its office files at the time of its sale to the Hurytas an odometer certification from Western Auto Buyers, Inc., that the true mileage was "unknown." I am persuaded that that information was sufficient to lead to an inference that Diers Motor Co. knew, within the meaning of the statute, that the true mileage was different from the odometer reading and that the difference was greater than that caused by odometer calibration error, in the absence of a showing by Diers Motor Co. that it had a reasonable basis for disregarding the word "UNKNOWN" on the certification received by it.

The legislative history in 3 *U. S. Code Congressional and Administrative News* p.

3971 (92nd Congress, Second Session, 1972) states:

"Section 408 makes it a violation of the title for any person 'knowingly' to give a false statement to a transferee. This section originally allowed a person to rely completely on the representations of the previous owner. This original provision created a potential loophole, however. For example, a person could have purchased a vehicle knowing that the mileage was false but received a statement from the transferor verifying the odometer reading. Suppose an auto dealer bought a car with a 20,000 mile odometer verification but any mechanic employed by that auto dealer could ascertain that the vehicle had at least 60,000 miles on it. The bill as introduced would have permitted the dealer to resell the vehicle with a 20,000 mile verification. In order to eliminate this potential loophole the test of 'knowingly' was incorporated so that the auto dealer with expertise now would have an affirmative duty to mark 'true mileage unknown' if, in the exercise of reasonable care, he would have reason to know that the mileage was more than that which the odometer had recorded or which the previous owner had certified."

██ In light of that history, the kind of knowledge which legally requires a seller to make a statement that the actual mileage is unknown may consist of something less than perfect assurance that the odometer reading is incorrect. The statute required Western Auto Buyers, Inc. to put "unknown" on its certification if it "knew" that the true mileage differed beyond calibration error from the odometer reading. Western wrote "unknown" and thereby told Diers that it, Western, knew the odometer to be markedly off. Diers, therefore, knew it, too, if it accepted Western's statement as true.

Diers argues that it should not be required to take Western's certification as being true, unless Diers had some reason to think it was true. The answer is that a dealer is not required to ascribe truth to every "unknown" declaration, but the spirit of the Act does not permit him to refuse to believe it, unless there is a satisfactory reason. Allowing a dealer, or any other automobile seller, to ignore information of odometer error would defeat a ·purpose of the Act. Here, Diers offered no satisfactory reason for disbelieving Western's certification. Diers' president testified that some dealers stamped "unknown" on all odometer certifications, but that he had no reason to think that Western did so. That is not a satisfactory reason for discrediting Western's certification.

I need not decide what an automobile seller must do to justify his giving an odometer certification without showing the· true mileage is unknown, when he has in his possession an odometer certification from his seller saying that the true mileage is unknown. For the purposes of this case it is sufficient to conclude that doing nothing is not enough. Diers Motor Co. could easily have asked its seller why "unknown" was on the certification, or could have traced the title back one step to Denver Auto Auction. It did neither, and it did nothing else to justify its disregard of Western's certification. Under these circumstances, I find that Diers Motor Co. violated 15 U.S.C. § 1988(b). I do not find that the defendant Clarence Pfeifer violated the provision, because there is no evidence that he knew at any time of the existence of the odometer certification by Western Auto Buyers, Inc.

In addition to violation of § 1988, the plaintiffs must show by a preponderance of the evidence, as a prerequisite to the recovery of damages, that Diers Motor Co. violated the section "with intent to defraud." I find that the plaintiffs have failed to carry their burden of proof in this respect. There is no evidence that Diers Motor Co. turned back the odometer or participated in it in any way. There is no evidence of a history of Diers' dealing in vehicles with altered odometers or of giving certifications without "unknown" on them where it had reason to think that the odometer reading was incorrect. There is no circumstance, beyond the bare failure to make a statement regarding this one vehicle that the true

mileage was unknown, upon which to base a finding of intent to defraud. Something more was required.

Judgment, accordingly, will be entered for the defendants.