COMMONWEALTH vs. COLONIAL MOTOR SALES, INC.
& another.[1]

Hampden. March 11, 1981. — May 12, 1981.

Present: HALE, C.J., GREANEY, & KASS, JJ.

*Practice, Civil*, Affidavit, Summary judgment, Continuance. *Agency*,
Scope of authority or employment. *Motor Vehicle*, Odometer.

In an action by the Commonwealth under G. L. c. 266, § 141, and 15
U.S.C. §§ 1988, 1989 (1976), against a corporation and its principal
officer for setting back, or dispensing false information about, the
mileage readings on nineteen automobiles sold by the corporation,
statements in the officer's affidavit as to certain of the sales in which
the officer did not materially dispute that the sale mileage was lower
than the purchase mileage but merely averred that someone else had
changed the odometers or that the affiant had no knowledge of the
correct odometer reading or of any tampering with the odometer or
offered an explanation based on the affiant's belief were not sufficient
to raise an issue of material fact, and summary judgment was
therefore correctly entered as to those automobiles. [805-808]
In an action by the Commonwealth under G. L. c. 266, § 141, and 15
U.S.C. §§ 1988, 1989 (1976), against a corporation and its principal
officer for setting back, or dispensing false information about, the
mileage readings on nineteen automobiles sold by the corporation,
statements in the officer's affidavit as to certain of the sales which
merely indicated that there was conflicting documentation as to the
correct odometer reading did not raise an issue of material fact since
the defendants had a duty under the Federal statute to disclose any
uncertainty in the mileage readings, and summary judgment was
therefore correctly entered as to those automobiles. [808-809]
In an action by the Commonwealth under G. L. c. 266, § 141, and 15
U.S.C. §§ 1988, 1989 (1976), against a corporation and its principal
officer for setting back, or dispensing false information about, the
mileage readings on nineteen automobiles sold by the corporation,
statements in the officer's affidavit which indicated an error in the
Commonwealth's supporting documents concerning one of the
automobiles were sufficient to raise an issue of material fact, and sum-

[1] Bruce Milton.

mary judgment therefore should not have been entered as to that automobile. [809-810]

Where counsel for the defendants in a civil action broke his ankle and was incapacitated for some time following a hearing on the plaintiff's motion for summary judgment but did not move for a continuance until some six weeks after the judge had made an order for partial summary judgment, the judge did not abuse his discretion in denying the defendants' motion. [810]

On appeal from an order for summary judgment, the defendant could not raise an issue which had not been raised in its affidavit in opposition to the motion for summary judgment. [810]

A corporation was liable under G. L. c. 266, § 141, and 15 U.S.C. §§ 1988, 1989 (1976), for the conduct of one of its employees who allegedly tampered with the mileage readings, without the knowledge of the corporation or its principal officer, on automobiles sold by the corporation. [810-811]

In an action by the Commonwealth under G. L. c. 266, § 141, and 15 U.S.C. §§ 1988, 1989 (1976), against a corporation and its principal officer for setting back, or dispensing false information about, the mileage readings on certain automobiles sold by the corporation, the judge erred in entering summary judgment against the officer individually and severally with the corporation where the officer's affidavit placed in dispute the question of his presence at the business when the odometer tampering occurred, the degree of his control over operations at the relevant times, and his awareness that someone was tampering with the odometers. [811-813]


CIVIL ACTION commenced in the Superior Court on January 12, 1978.

The case was heard by *Alberti, J.*, on motion for summary judgment.

*Merwyn J. Burstein* for the defendants.

*John T. Montgomery*, Assistant Attorney General, for the Commonwealth.

KASS, J.   State[2] and Federal[3] statutes establish civil liability for tampering with the odometer of a car.   Upon

---

[2] G. L. c. 266, § 141, as appearing in St. 1973, c. 456. A section immediately following, § 141A, makes odometer tampering a criminal offense.   Although referred to in the Commonwealth's civil complaint, it was not a basis — nor could it have been — for the civil judgment.

[3] 15 U.S.C. §§ 1988 & 1989 (1976).   See also 15 U.S.C. §§ 1984 & 1990a (1976).

the Commonwealth's motion for summary judgment, Colonial Motor Sales, Inc. (Colonial), and its principal officer, Bruce Milton, were held liable for setting back, or dispensing false information about, the mileage readings on nineteen cars sold by Colonial. In consequence, judgment entered ordering injunctive relief and assessing $28,500 in damages.[4]

The motion judge made his summary judgment decision on the basis of a supporting affidavit by an investigator for the Consumer Protection Division of the Department of the Attorney General and a counter affidavit by the defendant Milton. Whether the opposing affidavits placed in dispute any material facts requires analysis of each of the nineteen transactions because those transactions had varying characteristics. It is necessary first to isolate the conduct which will subject a person to liability under the State and Federal statutes.

General Laws c. 266, § 141, roughly parallels section 409(a) of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1989(a) (1976), in that civil liability attaches to what the used car trade calls an "odometer spinback." But differences exist which explain why the Attorney General chose to rest his complaint on both.[5] The State statute imposes liability upon whoever "alters the odometer of any motor vehicle with the intent to change the number of miles

---

[4] General Laws c. 266, § 141, and 15 U.S.C. § 1989(a)(1) (1976) provide for triple damages or assumed damages of $1,500 per violation, whichever is the greater. Actual damages were not known and the judge used the $1,500 per violation measure. Section 1990a(a)(1) empowers the chief law enforcement officer of a State to bring an action to restrain violations of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1981 et seq. (1976).

[5] The Attorney General had standing to bring the action under G. L. c. 93A, § 4, as amended through St. 1972, c. 544 (an amendment which became effective in 1980, after the action commenced, is not material), and under 15 U.S.C. § 1990a(a)(2) (1976). The Federal statute authorizes the chief law enforcement officer of the State in which a violation occurred under the Motor Vehicle Information and Cost Savings Act to recover amounts for which a person who violated the act is liable. He may also bring an action to restrain violations of the act. See note 4 supra.

indicated thereon." G. L. c. 266, § 141. Intent to defraud need not be proved; such an intent is required only with regard to driving a car "knowing that the odometer of . . . [the] vehicle is disconnected [or] nonfunctional." *Id.* The Federal statute imposes liability only on a violation (of the Motor Vehicle Information and Cost Savings Act) committed "with intent to defraud." 15 U.S.C. 1989(a) (1976). Something less than an odometer spinback, however, constitutes an infraction of the Federal act. If the transferor of an automobile knows the odometer reading "to be different from the number of miles the vehicle has actually travelled," he is to disclose that "the actual mileage is unknown." 15 U.S.C. § 1988(a)(2) (1976). See also regulations under the statute appearing at 49 C.F.R. §§ 580.4 and 580.6 (1973).[6]

The easiest case for the plaintiff under the mileage disclosure laws, therefore, is one where the defendant has himself set the odometer back. No intent to defraud need be shown and even if it were (as under the Federal statute), the very fact of the spinback warrants an inference of intent to defraud. *Delay* v. *Hearn Ford,* 373 F.Supp. 791, 795 (D. S.C. 1974).[7] *Klein* v. *Pincus,* 397 F.Supp. 847, 851 (E.D. N.Y. 1975). Fraud is implied in the absence of an explanation. *Duval* v. *Midwest Auto City, Inc.,* 425 F.Supp. 1381,

---

[6] Those regulations were revised in 1977 and 1980 and, as revised, appear in the 1980 edition of 49 C.F.R. Section 580.6 of the regulations set out a form of "Odometer Mileage Statement" to be used which gives the transferor a choice of boxes to check concerning the reliability of the odometer reading and the reliability or accuracy of the odometer itself. One of the boxes which a person making disclosure may check reads, in its 1980 form, as follows: "I hereby certify that to the best of my knowledge the odometer reading as stated above is NOT the actual mileage of the vehicle described below, and should not be relied upon." In its 1973 form, the transferor did not "certify," he "state[d]" that "the actual mileage is unknown."

[7] Chicanery came to light in the *Delay* case when the plaintiff, disappointed with his new car, bought back the 1967 Chevrolet he had traded in and found that the odometer read 49,000 miles. When the plaintiff had earlier sold the Chevrolet to the defendant the odometer read 72,000 miles.

1386 (D. Neb. 1977), aff'd, 578 F.2d 721 (1978). How many miles a car has travelled has a substantial bearing on the market value of a car. In the case of a car with high mileage dealers may deduct as much as forty percent from the "blue book" value. *Jones* v. *Fenton Ford, Inc.,* 427 F.Supp. 1328, 1337 n. 20 (D. Conn. 1977). A car dealer, therefore, who sets an odometer back does so precisely for the purpose of inducing a customer to part with more money than the car is worth. See *Gopen* v. *American Supply Co.,* 10 Mass. App. Ct. 342, 345 (1980); *Fenton Ford, Inc., supra* at 1334; Restatement (Second) of Torts §§ 525, 527 & 529 (1977).

In its supporting affidavit the Commonwealth, as to each of the nineteen cars, described the date of purchase by Colonial, the make and model of the car, its vehicle identification number, and the odometer reading when Colonial acquired the car. The affidavit then described the date of sale by Colonial, the transferee and the odometer reading (lower) at the time of sale. Attached to the affidavit, as to each car, were the bill of sale or odometer disclosure statement given to Colonial and the bill of sale or odometer statement which Colonial gave when it sold the car. Had it not been responded to, the Commonwealth's affidavit would have adduced facts sufficient to entitle it to summary judgment against Colonial.[8] The affidavit sets forth an unexplained reduction in the odometer readings of each of the cars when it left the ownership of Colonial. How this came about need not be proved. The fact of the odometer tampering itself makes out a case unless the defendant establishes it was none of his doing or that there was some explanation. See *Delay* v. *Hearn Ford,* 373 F.Supp. at 795; *Klein* v. *Pincus,* 397 F.Supp. at 851. Compare *Mataya* v. *Behm Motors, Inc.,* 409 F.Supp. 65, 69-70 (E.D. Wis. 1976).

Colonial and Milton did, however, respond with an affidavit which says variously, depending on the car, that no odometer alteration occurred, that the mileage on receipt of

---

[8] We shall leave Milton's liability to a later portion of this opinion.

the car by Colonial was wrong, or that someone else tinkered with the meter. As to ten of the nineteen transactions, the defendants concede that the vehicles were sold with odometer readings that were lower than at the time of purchase but make assertions which they claim raise issues of material fact as to whether they are liable under the statutes. There is no alternative to analyzing the transactions one by one and applying the principles laid down in *Community Natl. Bank* v. *Dawes*, 369 Mass. 550 (1976). We shall refer to cars by assigning them numbers based on the order in which they appear in the Commonwealth's affidavit, but so as to treat cars in groups which raise common issues, we shall not deal with them sequentially.

*Group One.*

*Cars as to which the affidavits do not materially dispute that the sale mileage was lower than the purchase mileage.*

*Car No. 1* (a 1975 Plymouth Duster): The Commonwealth's affidavit and documents show mileage in (i.e., on acquisition by Colonial) of 17,656 and mileage out (i.e., on sale by Colonial) of 13,000. The defendants' affidavit states that Colonial then repurchased the vehicle and that "if any odometer tampering had been done, it was done by West Springfield Chrysler Plymouth." This response raises no issue of material fact. There is no suggestion that following repurchase the odometer was set to the correct mileage; the violation appears to have continued. The affidavit says nothing about the circumstances of the repurchase, which may have had nothing to do with false mileage. It does the defendants no good to state that somebody else changed the meter. On the Commonwealth's documents, the odometer was spun back while Colonial owned the car. A counter affidavit must set forth specific facts and "may not rest upon the mere allegations or denials of his pleading." Mass.R. Civ.P. 56(e), 365 Mass. 825 (1974). The unelaborated and undocumented statement that its customer changed the odometer, in the face of an odometer certificate signed by Milton which appears in the Commonwealth's affidavit, does not rise above a mere allegation or move sufficiently

beyond the defendants' pleading. See *John B. Deary, Inc.* v. *Crane,* 4 Mass. App. Ct. 719, 723-724 (1976). The material offered in the attempt to raise a dispute is insubstantial. See *Firemen's Mut. Ins. Co.* v. *Aponaug Mfg. Co.,* 149 F.2d 359, 362 (5th Cir. 1945); *Hahn* v. *Sargent,* 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). Summary judgment was correctly entered as to this car.

*Car No. 3* (a 1973 Buick Century): The Commonwealth's affidavit and documents show a mileage in of 62,570 and a mileage out of 38,000. The defense affidavit says "the file [presumably relating to this car] was not returned by the [p]laintiff, and so no response can be given . . . at the present time." This places no material fact in dispute. The defendants describe no effort to obtain exculpatory information. Summary judgment was correctly entered as to this car.

*Car No. 5* (a 1975 Mercury Monarch): The Commonwealth's affidavit and documents show a mileage in of 49,206 and a mileage out of 19,560. The defense affidavit places responsibility on an employee (one Jackman, of whom more needs to be said later), claims Milton's signature does not appear, "and if it does appear, it is not a genuine signature." This puts no material fact in issue for the reasons discussed in the case of Car No. 1. Summary judgment was correctly entered as to this car.

*Car No. 7* (a 1974 Plymouth Fury): The Commonwealth's affidavit and documents show a mileage in of 92,000 and a mileage out of 38,897. The defense affidavit, without support for the assertion, says that the mileage on the bill of sale "is obviously in error" and that the affiant "believe[s]" the odometer statement annexed to the Commonwealth's affidavit "would show the mileage close to that at which the vehicle was sold." The unsupported and unelaborated allegation suffers the infirmity discussed in connection with Car No. 1 and statements of belief carry no weight in an affidavit in support of summary judgment. *Stetson* v. *Selectmen of Carlisle,* 369 Mass. 755, 763 n.12

(1976). *Hartford Acc. & Indem. Co.* v. *Millis Roofing & Sheet Metal, Inc., post* 998, 999 (1981). Summary judgment was correctly entered as to this car.

*Car No. 10* (a 1975 Plymouth Duster): The Commonwealth's affidavit and documents show a mileage in of 23,375 and a mileage out of 13,810. The defense affidavit offers an explanation based on belief (see discussion under Car No. 7), and, therefore, there is no issue of material fact. Summary judgment was correctly entered.

*Car No. 14* (a 1973 Chevrolet Impala): The Commonwealth's affidavit and documents show a mileage in of 67,690 and a mileage out of 36,995. The defense affidavit claims ignorance of the vehicle and denies having dealt with it; that the odometer statement from the seller to Colonial was never received by it; and that the odometer statement delivered by Colonial was not signed by it. A generalized denial is not an assertion of fact. *Norwood Morris Plan Co.* v. *McCarthy,* 295 Mass. 597, 604 (1936). The affidavit also lays blame on Jackman. Summary judgment was correctly entered.

*Car No. 15* (a 1973 Chevrolet Chevelle): The Commonwealth's affidavit and documents show mileage in of 77,411 and mileage out of 37,802. The defense affidavit says no one at Colonial signed its odometer statement and that, in any event, it was all on Jackman's head. Summary judgment was correctly entered.

*Car No. 17* (a 1973 Ford Torino): The Commonwealth's affidavit and documents show mileage in of 69,986 and mileage out of 40,150. The defense affidavit, after laying the blame on Jackman, says Colonial repurchased the car after the odometer discrepancy was discovered. As in the case of Car No. 1, there is no suggestion that following repurchase the odometer was set to the correct mileage. Summary judgment was correctly entered.

*Car No. 18* (a 1973 Pontiac Grand Prix): The Commonwealth's affidavit and documents show a mileage in of 60,000 and a mileage out of 40,960. The defense affidavit says neither Colonial nor Milton had seen the document of trans-

fer (showing the higher mileage) appended to the Common-wealth's affidavit. This puts no material fact in issue. Summary judgment was correctly entered.

*Car No. 19* (a 1973 Dodge Dart): The Commonwealth's affidavit and documents show a mileage in of 55,422 and a mileage out of 25,561. The defense affidavit disclaims knowledge of the odometer reading on the vehicle or any tampering with the odometer. This puts no material fact in issue. Summary judgment was correctly entered.

*Group Two.*

*Cars as to which the affidavits require the conclusion that the mileage reading on the odometers was uncertain.*

*Car No. 2* (a 1974 Dodge Monaco): The Common-wealth's affidavit and documents shows a mileage in of 49,055 and a mileage out of 29,200. The defense affidavit calls attention to a lower purchase mileage — 29,055 — which appears on an assignment of title furnished by a previous owner to Hampden Dodge, Inc., two days before Colonial bought the car from Hampden. Confronted with conflicting evidence as to what the mileage on the car in fact was, Colonial was not entitled to choose the lower mileage for purposes of its certification. As we noted above, § 1988(a)(2) and regulations appearing at 49 C.F.R §§ 580.4 and 580.6 (1973) require a seller of a car to so state if he has reason to think the odometer reading is suspect. These provisions do not require actual knowledge that the odometer reading is wrong. There is a duty to disclose uncertainty, "if, in the exercise of reasonable care, [the transferor] would have had reason to know that the mileage was more than that which the odometer had recorded or the previous owner had certified." *Nieto* v. *Pence*, 578 F.2d 640, 642 (5th Cir. 1978). *Huryta* v. *Diers Motor Co.*, 426 F.Supp. 1176, 1178 (D. Neb. 1977). In the instant case Colonial possessed conflicting information as to the "mileage in." In those circumstances it had a duty to dis-close that the mileage was uncertain. We recognize that this requires some care in the inspection and keeping of records by used-car dealers. But "the maintenance of a

thorough, well-supervised record-keeping system with respect to OM [odometer mileage] Statements is a clear, implicit requirement of the MVICS [Motor Vehicle Information and Cost Savings] Act. At the very least, it should be required that sales personnel read and accurately represent to prospective purchasers the content of an automobile's file, and that OM Statements be certified only upon the basis of back-up information actually available in the file." *Jones* v. *Fenton Ford, Inc.*, 427 F.Supp. at 1336.[9] Summary judgment entered correctly as to this car.

The same reasoning applies to *Car No. 4* (a 1975 Ford Granada), *Car No. 6* (a 1974 Plymouth Scamp), *Car No. 8* (a 1975 Plymouth Duster), *Car No. 11* (a 1974 Ford Maverick), *Car No. 12* (a 1973 Chevrolet Impala), *Car No. 13* (a 1974 Plymouth Satellite),[10] *Car No. 16* (a 1974 Pontiac Grand AM). As to each of these cars there was conflicting documentation (in two cases showing as much as a 30,000 mile discrepancy) which required Colonial to state that the odometer reading was uncertain. Summary judgment as to these cars, therefore, was correctly entered.

*Group Three.*

*Cars as to which the affidavits placed in dispute a material fact.*

*Car No. 9* (a 1975 Plymouth Fury): The Commonwealth's affidavit and documents show a mileage in of 19,786 and a mileage out of 11,820. The defense affidavit calls to attention that the Commonwealth's supporting documents have Colonial selling this car on March 11, 1976, six days before it acquired the vehicle on March 17, 1976. Col-

---

[9] In 1978, the Secretary of Transportation issued a regulation which required dealers and distributors of motor vehicles to retain (so as to be easily retrievable) records of odometer statements received and given. See 49 C.F.R. § 580.7 (1980).

[10] The assertion as to this car, that the title certificate from the vendor to Colonial showed a mileage of 36,009, some 30,000 less than appears on the vendor's unsigned odometer certificate, is unsupported by any documentation, but we think the affidavit's implication of the existence of such a certificate more properly places Car No. 13 in Group Two than Group One.

onial says that the records are obviously in error and that the mileage statement records are likewise in error. By observing the unreliability of the Commonwealth's documents as to this transaction, Colonial has placed in issue the material facts concerning the mileage in and mileage out. Summary judgment ought not to have entered as to this car.

We now turn to several subsidiary issues raised by the defendants.

1. *The refusal of the trial judge to continue the proceedings.* Counsel for the defendants broke his ankle and was incapacitated for some time following a hearing of the Commonwealth's motion for summary judgment which had occurred on April 4, 1979. On that date the defendants had not yet filed a counter affidavit. The judge would have been warranted in acting on the case as it then stood; rather, he gave the defendants time to file a counter affidavit. Thereupon the Commonwealth filed a supplementary memorandum of law touching on the contents of the counter affidavit. A motion for a continuance did not materialize until July 5, 1979, some six weeks after the judge had made an order for partial summary judgment. A motion for a continuance rests entirely within the discretion of the judge unless abuse of that discretion appears. We perceive no abuse. *Mowat* v. *DeLuca,* 330 Mass. 711, 712 (1953).

2. *Whether Colonial knew of the discrepancies which gave notice that as to the Group Two vehicles the mileage was uncertain.* In its brief, on appeal, Colonial argues that certain certificates of title or bills of sale were received only after Colonial had sold the cars to which they pertained. Accordingly, Colonial says it could not have been alert to the odometer reading deviations which required a disclosure of uncertain mileage. The later availability of the conflicting papers is not in the least apparent from the defendants' counter affidavit. Having failed to raise the issue during the summary judgment motion proceedings, the defendant may not do so now. *Bonitz* v. *Travelers Ins. Co.,*

374 Mass. 327, 332-333 (1978). We do not intimate that a defense would have been established even had Colonial's affidavit set forth facts indicating that certain bills of sale had been received late. See the discussion in connection with Car No. 2 above concerning a dealer's duty to keep orderly records.

3. *The unauthorized conduct defense.* The defendants place blame for the odometer tampering upon one Jackman, in whom Colonial reposed substantial responsibility, while Milton, its principal officer, attended to other corporate affairs and a personal domestic crisis. In his affidavit, Milton says that when he first learned Jackman had spun an odometer he warned him it must not happen again; when he learned of another tampering incident he severed Colonial's connection with Jackman. The defendants' theory is that Colonial ought not to be bound by an employee's unauthorized unlawful conduct of business. Such is not the law; corporations are, indeed, liable for unauthorized torts which occur in the course of the corporation's business. *Nims* v. *Mount Hermon Boys' Sch.,* 160 Mass. 177, 177-178 (1893). *McCarthy* v. *Brockton Natl. Bank,* 314 Mass. 318, 324-325 (1943). Cf. *Miller* v. *Federated Dept. Stores, Inc.,* 364 Mass. 340, 345-350 (1973); *Cellucci* v. *Sun Oil Co.,* 2 Mass. App. Ct. 722, 732 (1974), *S. C.,* 368 Mass. 811 (1975).

4. *The liability of Milton.* Judgment in the amount of $28,500 ran against Colonial and Bruce Milton, its principal officer and director, "individually and severally." Milton concedes his controlling status in his counter affidavit, but asserts that he was long occupied with matters other than the sale of cars (notably renovations and repairs to Colonial's real estate) and with his marital travail, that he altered no odometers, gave express instructions against it, and in July, 1976, fired Jackman for doing so.

In response, the Commonwealth argues in its brief that examination of the affidavits discloses that Milton signed thirteen false mileage documents, and that he signed an entire book of odometer statements in blank for Jackman to

use. The Commonwealth also reads from the affidavits that four of the tainted transactions occurred after Jackman's departure, but we do not think this fact emerges at all clearly from the affidavits.

While, indeed, an officer and director of a corporation may so pervasively control the particular actions of a corporation that liability will be imputed to him on principles of agency or causation, *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 618 (1968),[11] we think that Milton has placed in dispute the question of his presence at the business when the odometer tampering occurred, the degree of his control over operations at the relevant times, and his awareness of what was going on. It may well be that in view of the many papers suggesting Milton's presence at the business and the odometer statements bearing his signature that Milton's claim of noninvolvement ranges from implausible to lame, but the opposing party's affidavit must be read generously, *Hub Associates* v. *Goode,* 357 Mass. 449, 451 (1970), and a party is not entitled to summary judgment just because it appears the adversary is unlikely to prevail at trial. *Jobson* v. *Henne,* 355 F.2d 129, 133 (2d Cir. 1966). 10 Wright & Miller, Federal Practice and Procedure § 2725, at 514 (1973). See Smith & Zobel, Rules Practice § 56.8, at 359-360 (1977).

We do not share the view adopted by the motion judge that Milton's signing of the blank odometer statements in "itself [was] such gross negligence as to sustain the inference of fraud under the . . . statutes . . . and constitute[d] a violation" of the Federal regulations. Indeed, §§ 580.1 through 580.6 of 49 C.F.R. (1973) pertain only to the "transferor" of an automobile, a term which is defined in § 580.3 as meaning "any person who transfers his ownership in a motor vehicle by sale, gift, or any means other than by creation of a security interest." Under that description the transferor in all nineteen transactions was Colonial. See *Duval* v.

---

[11] See also *Commonwealth* v. *Abbott Engr., Inc.,* 351 Mass. 568, 579-580 (1967); *Nader* v. *Citron,* 372 Mass. 96, 102 (1977).

*Midwest Auto City, Inc.,* 578 F.2d 721, 724-725 (8th Cir. 1978). Whether entrusting pre-signed blank odometer statements to Jackman was merely imprudent, rather than reckless, depends on what Milton, making reasonable inquiry,[12] might have known about Jackman's competence and character. These are questions we cannot resolve on the basis of the summary judgment papers.

Although in many instances Colonial violated the State and Federal statutes, the judge and the Commonwealth have apparently taken the view that the liabilities under the statutes ought not to be compounded, i.e., as to each car the appropriate damages were $1,500, the amount established in both statutes.

The final judgment and partial judgment[13] are vacated and the case is remanded to the Superior Court for proceedings consistent with this opinion. Since this opinion is consistent with much of the substance of the partial judgment and final judgment, the judge may wish to certify pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), that there is no just reason for delay, and to enter a judgment which reduces the dollar amount of the damages by $1,500 to $27,000 and assesses damages only against Colonial; which eliminates the reference to the 1975 Plymouth Fury VIN # RH23G5G184142; which limits the judgment of liability to Colonial; but which grants injunctive relief against Colonial and Milton.

*So ordered.*

---

[12] We agree with the Commonwealth that Milton cannot evade responsibility by insulating himself with a layer of ignorance. See *Delay* v. *Hearn Ford,* 373 F.Supp. at 795.

[13] The "partial judgment" established liability. The final judgment established the dollar amount of the liability.