489 So.2d 518 (1986)
SIMMONS AUTO SALES, INC.
v.
ROYAL MOTOR COMPANY, INC.
ROYAL MOTOR COMPANY, INC.
v.
Richard D. GOFF, et al.
84-1199, 84-1200.
Supreme Court of Alabama.
February 28, 1986.
As Corrected on Denial of Rehearing May 9, 1986.
*520 Frank A. Hickman, Greenville, for appellant.
Roger S. Morrow of Whitesell, Morrow & Romine, Montgomery, for appellees/appellants Royal Motor Co., Inc. & Terry Styron.
JONES, Justice.
These cases involve a dispute over the purchase by Simmons Auto Sales (Simmons) of a used automobile from Royal Motor Company (Royal). After purchasing the car, Simmons discovered that the odometer reading had been changed to reflect a substantially lower mileage than that actually accumulated. The only question presented to us on appeal is whether the trial court erred in granting summary judgment against Simmons on its claim under Code 1975, § 6-5-101, for legal fraud.
Section 6-5-101 provides:
"Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
Simmons claims that the misrepresentation upon which he relied was the certification of correctness by Royal as to the odometer reading. That certification provided:
"We hereby certify to the best of our knowledge the odometer reading as stated above reflects actual mileage of the vehicle described above...."
It further provided:
"We hereby certify that the odometer of said vehicle was not altered, set back, or disconnected while in our possession, and we have no knowledge of anyone else doing so."
Answering Simmons's claim of misrepresentation, "made by mistake and innocently," Royal asserts that, because of the particular wording of this certification, no misrepresentation was made to Simmons with respect to the mileage. The trial judge agreed, holding that the "to the best of our knowledge" language acted as a bar to this kind of action for fraud.[1] Because of the intent of both 15 U.S.C. § 1981, et seq., and Code 1975, § 6-5-101, we are unable to agree with his holding.
Royal has traced the chain of title back to the first relevant sale, which resulted from a repossession by General Motors Acceptance Corporation (GMAC), and has properly brought each of the prior sellers within the jurisdiction of the court as third-party defendants.
It is clear from the record that the car once had an odometer reading of 91,295 miles. Yet when it was purchased by Simmons, its odometer reading was only 58,402. It seems evident that one of the previous owners of the car had the odometer set back.[2] Because all of the previous owners *521 of the car are before the court, letting the case proceed to trial, pursuant to our summary judgment standard, is not only the most expedient course, but it comports with the goal of ultimate justice among all the parties by permitting the trier of fact to make a determination of whether the odometer was in fact set back, and, if so, who is responsible.
Simmons argues that the language and intent of 15 U.S.C. § 1981 supplements its cause of action under Code 1975, § 6-5-101. A discussion of these two code sections, one federal and the other state, will help to clarify our holding.

I.
The federal statute, 15 U.S.C. § 1981, et seq., was enacted as part of the Motor Vehicle Information and Cost Savings Act. That portion of the Act was designed to protect consumers from fraud. The Senate Commerce Committee found that consumers rely heavily "upon odometer readings as an index of the condition and value of motor vehicles." S.Rep. No. 413, 92d Cong., 2d Sess. 4, reprinted in 1972 U.S. Code Cong. & Ad.News 3960, 3962. Because of this reliance, the bill mandated a national policy against the disconnection or setting back of odometers. Id.
It is clear from the legislative history that Congress was attempting to prevent the kind of fraud which is alleged to have occurred in this case. In a section-by-section analysis of the bill, provided in the Senate report, the problem was addressed briefly as follows:
"Section 408 makes it a violation of the title for any person `knowingly' to give a false statement to a transferee. This section originally allowed a person to rely completely on the representations of the previous owner. This original provision created a potential loophole, however. For example, a person could have purchased a vehicle knowing that the mileage was false but received a statement from the transferor verifying the odometer reading. Suppose an auto dealer bought a car with a 20,000 mile odometer verification but any mechanic employed by that auto dealer could ascertain that the vehicle had at least 60,000 miles on it. The bill as introduced would have permitted the dealer to resell the vehicle with a 20,000 mile verification. In order to eliminate this potential loophole the test of `knowingly' was incorporated so that the auto dealer with expertise now would have an affirmative duty to mark `true mileage unknown' if, in the exercise of reasonable care, he would have reason to know that the mileage was more than that which the odometer had recorded or which the previous owner had certified." Id., in 1972 U.S.Code Cong. & Ad.News at 3971-72. (Emphasis added.)
The obvious intent of the law is to prohibit the setting back of odometers. Because auto dealers, such as those involved here, make up such a large portion of the used car market, and because they are generally equipped with the personnel and physical equipment to discover odometer "rollbacks," public policy demands that auto dealers utilize their expertise to discover these alterations. Contrary to the implication of the trial court's ruling, dealers will not be allowed to close their eyes to the practice of altering odometer readings. The effect of the trial court's ruling would be to encourage used car dealers not to inspect the cars which they purchase. This would inevitably lead to the movement in interstate commerce of automobiles which are both less safe and of less market value than that indicated by the odometer reading.
In testing Royal's liability for the innocent misrepresentation, the jury is free to draw the inference that while Royal's misrepresentation was made without actual intent to defraud, Royal could have discovered the truth, as the record aptly displays, *522 by merely tracing back the records of ownership. Thus, in keeping with the letter and the spirit of federal public policy, consistent with our legal fraud statute, automobile dealers are required to use reasonable diligence to inspect used cars purchased for resale.
The award of damages which Simmons will be allowed to recover is limited by the pleadings to compensatory damages. Royal, on the other hand, may recover punitive damages in addition to compensatory damages if it proves that one of the third-party defendants was responsible for changing the odometer reading with the intent to defraud the purchaser. As an added incentive for compliance, and added rationale for our interpretation of the intent of the federal law, we note that § 1989 provides for treble damages and for the award of attorneys' fees to one who is successful in prosecuting a claim under the federal Act.
In Nieto v. Pence, 578 F.2d 640 (5th Cir.1978), the court held, at 642:
"[D]efendant had a duty to disclose that the actual mileage was unknown if, in the exercise of reasonable care, he would have had reason to know that the mileage was more than that which the odometer had recorded or the previous owner had certified.
"...
"... If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risk of such an occurrence."
The court added in a footnote:
"Our conclusion is rooted in the facts of this case. The Senate Report suggests that auto dealers should adopt business practices reasonably calculated to uncover incorrect odometer readings. Plaintiff presented no evidence that defendant had not adopted such business practices, and defendant offered no evidence that he had. Thus we do not need to decide whether a court might infer from the failure to adopt such practices that a dealer knew his practices would work to defraud some of the people with whom he would deal or conversely whether a court might infer from the adoption of such practices that a dealer lacked constructive knowledge or intent to defraud." Id. at 642-43, fn. 3. (Emphasis added.)
Similarly, in Huryta v. Diers Motor Co., 426 F.Supp. 1176 (D.Neb.1977), the court held:
"In light of that [congressional] history, the kind of knowledge which legally requires a seller to make a statement that the actual mileage is unknown may consist of something less than perfect assurance that the odometer reading is incorrect." 426 F.Supp. at 1178.
The clear understanding of these courts, as well as of others, conforms with our own; that is, that Congress intended that auto dealers bear a heavy responsibility for policing their own industry to help rid the marketplace of fraudulent practices. Thus, our holding that Simmons has stated a viable claim for misrepresentation is completely in step with the intentions of the Congressional framers of the Act.

II.
Because Simmons has specifically chosen not to pursue its claim under the Motor Vehicle Information and Cost Savings Act, but to pursue its claim against Royal under Alabama's "legal fraud" statute only on the grounds of an innocent misrepresentation, we need not here decide the issue of what "knowledge" is necessary to constitute an "intent to defraud" as required by the federal statute. Our holding is limited to the issue of whether the statement by Royal constituted a misrepresentation upon which Simmons was justified in relying. We note further, however, that Simmons's election to state its claim pursuant to Alabama's "legal fraud" statute does not prevent application of those federal public policy considerations embodied in the federal Act.
*523 The trial court's ruling is not clear as to why the "to the best of our knowledge" language destroyed Simmons's claim, but it appears that the trial judge believed the language to transform the statement from one of fact into one of opinion.
"The particular circumstances determine largely the result in the cases distinguishing opinion from fact. This seems to be true, partly, at least, for the reason, that the questions whether a representation should be regarded as a mere expression of opinion, and whether one to whom it is made ordinarily does, and has a right to, rely thereon, depend on the nature of the representation and the relation of the parties." Scholz Homes, Inc. v. Hooper, 287 Ala. 628, 254 So.2d 328 (1971). See, also, Kaye v. Pawnee Construction Co., 680 F.2d 1360 (11th Cir.1982).
Here, the nature of the representation turns on its subject matter, viewed in the light of public policy considerations expressed in the federal legislation.
Because these were two car dealers operating at arm's length, our inquiry must focus on the question of what material fact, if any, was contained within the representation; "that is, [what fact was there] of such nature as to induce action on the part of the complaining party." Cooper v. Rowe, 208 Ala. 494, 94 So. 725 (1922). Material facts are such facts as would induce the injured party to take action. Shafer v. Timmons, 51 Ala.App. 157, 283 So.2d 609 (1973).
In this case, clearly, from the evidence supporting the summary judgment motion and that opposing it, the jury could reasonably infer that the fact intended by the seller to be relied upon, and that which the buyer did in fact rely upon, was the odometer reading, which was certified to as to its correctness. "The law imposes the duty of ascertaining the truth of the statement before making it, and demands in case of omission that the representation should be made good." Jordan & Sons v. Pickett, 78 Ala. 331, 338 (1884), quoted in Southern Loan & Trust Co. v. Gissendaner, 4 Ala. App. 523, 530, 58 So. 737 (1912).
Here, also, justice and the dictates of public policy demand that this automobile dealer, and others similarly situated, accept the responsibility of using reasonable care in inspecting the cars which they purchase, so as to reasonably insure that the odometer readings which they certify as correct are in fact correct.
To Royal's argument that the contract of sale contained an "as is" provision, we can only observe that it is this very defense that is subsumed by the Congressional legislation. The "as is" disclaimer, as it relates to mileage registration, gives way to the federal act's mandate for mileage certification. Again, we reiterate that, if the seller, in the exercise of reasonable care, has reason to believe the odometer reading is inaccurate, he has the option of checking the block opposite the certification "actual mileage unknown," and thus avoiding the risk of charging the buyer the higher price for a lower mileage motor vehicle.
As the foregoing discussion of both the legislative history of 15 U.S.C. § 1981, et seq., and Alabama's case law with respect to legal fraud shows, Royal's simple reliance on the certification which was received from its transferor is not sufficient, as a matter of law, to protect it from liability under Code 1975, § 6-5-101. Because genuine issues of material fact are here presented, requiring resolution by the jury, the summary judgment of the trial court is due to be, and it hereby is, reversed.
REVERSED AND REMANDED.
MADDOX, SHORES and ADAMS, JJ., concur.
TORBERT, C.J., concurs specially.
TORBERT, Chief Justice (concurring specially).
The central issue in this case is whether the certification of mileage given by Royal Motor Company (Royal) to Simmons Motor *524 Company (Simmons) is a false representation under Code 1975, § 6-5-101.
Initially, I should point out that I agree that Simmons potentially has a valid claim under the federal act, 15 U.S.C. § 1981 et seq. However, this action was not brought pursuant to the federal act and I thought it appropriate to explain my understanding of why the existence of the federal act is relevant to this fraud case brought under state law.
Because this is a summary judgment case, our inquiry is whether there is a scintilla of evidence showing that the certification was a false representation. Owens v. National Sec. of Alabama, Inc., 454 So.2d 1387 (Ala.1984). In addition, it is important to remember that Simmons is alleging that an "innocent" misrepresentation took place, so that the defendant's scienter is not an issue.
If Royal had stated that the car had 58402 miles on it, and there was evidence showing that this was untrue, then if Simmons relied on the statement and was damaged, Simmons would have an action for an "innocent" fraud, and summary judgment would be inappropriate. In this case Royal stated:
"We hereby certify to the best of our knowledge the odometer reading as stated above reflects actual mileage of the vehicle described above...."
Royal further stated:
"We hereby certify that the odometer of said vehicle was not altered, set back, or disconnected while in our possession, and we have no knowledge of anyone else doing so."
While knowledge of the defendant is not ordinarily an issue in an innocent fraud case, the contents of these particular statements inject the issue of knowledge into the case. The question now is not simply whether there is evidence showing the car had more than 58402 miles on it but also whether Royal knew or should have known that the car had more than 58402 miles on it. Unless the answer to both prongs of the inquiry is in the affirmative, there has been no false representation.
There is evidence tending to show that the car had more than 58402 miles on it. But where is the evidence showing that Royal knew or should have known that the mileage was more than 58402? The inference arises from the fact that Royal made the certification solely on the basis of the information it received from Royal's seller. Under the federal act Royal was under a duty to do more than simply rely on the prior certification.[1]
The facts suggest that if Royal had done something more it would have known the mileage was more than 58402. Therefore, the failure to comply with federal law raises an inference that Royal should have known the mileage was incorrect, and summary judgment was inappropriate.

On Application for Rehearing
JONES, Justice.
OPINION CORRECTED; APPLICATION FOR REHEARING OVERRULED.
TORBERT, C.J., and MADDOX, SHORES, and ADAMS, JJ., concur.
NOTES
[1] The printed certification form used by these parties provides, pursuant to the federal statute, a "true mileage unknown" alternative, which was not "marked" in this case.
[2] Although Royal argues in support of summary judgment that Simmons offered no admissible proof of higher mileage than that reflected by the odometer, the record clearly shows that one of the third-party defendants attached to its answer to Royal's third-party complaint a copy of a "verification of mileage" form indicating 91,285 miles at the time of that party's purchase and 91,295 miles at the time of its sale. For clarification, we also note that Royal filed a notice of appeal as to each of the third-party defendants and that all the parties to this appeal agree that, in the event Simmons prevails on appeal, the cause is to be remanded for trial against Royal with its rights preserved against each third-party defendant.
[1] I note that the duty imposed by 15 U.S.C. § 1981, et seq. is not clearly articulated in the main opinion. Apparently the duty as set out by the main opinion includes an inspection by a mechanic, but the opinion could also be interpreted to require that the paper trail of prior ownership documents be acquired and inspected.