Because I would have answered a question as rephrased differently from the answer given by the majority, I must respectfully dissent. Pursuant to Rule 18, A.R.A.P., the United States District Court for the Middle District of Alabama certified to us the question: "Whether the Supreme Court of Alabama would use the Small Business Act as a standard in determining fraud, unjust enrichment or interference with a business relationship" in a suit brought by the second lowest and unsuccessful bidder against the lowest and successful bidder on a government contract. Pursuant to Rule 18, A.R.A.P., we reserve the right to rephrase the District Court's question and answer it as rephrased. The question that I would have answered in a rephrased form is: Whether the Supreme Court of Alabama would use that portion of the Small Business Act which defines what a small business is, and the Small Business Administration's determination in a particular case as to what a small business is, as evidence in a state cause of action for fraud, unjust enrichment, or interference with a business relationship"? My answer to the rephrased certified question would be "Yes."
My objection to the use of the word "standard" in the question posed by the Eleventh Circuit Court of Appeals, and finally certified to this Court by the United States District Court for the Middle District of Alabama is that our opinion might be interpreted to say that the Small Business Act had created a federal cause of action which could be enforced in the state courts. This interpretation would indeed be unfortunate, inasmuch as the Eleventh Circuit Court of Appeals itself had said that the Small Business Act did not create a federal cause of action. However, that court went on to say that although no federal action was created, Congress did not intend to preempt the field so that there could be no state cause of action based on the act.
In saying that I would recognize causes of action in fraud, unjust enrichment, and unlawful interference with a business relationship, and allow the Small Business Administration's definitions and determinations as evidence in those cases, I would not be saying something entirely new. Recently, we said in Simmons Auto Sales, Inc. v. Royal Motor Co., 489 So.2d 518
(Ala. 1986), that a plaintiff making a claim under Code 1975, §6-5-101, for legal fraud against a defendant used automobile dealer could use the standard set forth in the federal statute,15 U.S.C. § 1981, et seq. (a part of the Motor Vehicle Information and Cost Savings Act), dealing with what the used car dealer must do in connection with the odometer reading on the used car to be sold. In that case, the plaintiff, Simmons, discovered that the odometer reading had been changed to reflect a substantially lower mileage than had actually been accumulated. The used car dealer had certified, in purported compliance with the present statute: *Page 707 
 We hereby certify to the best of our knowledge the odometer reading as stated above reflects actual mileage of the vehicle described above. . . .
 We hereby certify that the odometer of said vehicle was not altered, set back, or disconnected while in our possession, and we have no knowledge of anyone else doing so.
The federal statute required a certification concerning the reading on the odometer. The trial judge entered summary judgment for the used car salesman because he thought the language in the certification "to the best of our knowledge" acted as a bar to a state cause of action for fraud. We reversed the trial court's grant of summary judgment and said:
 The obvious intent of the law is to prohibit the setting back of odometers. Because auto dealers, such as those involved here, make up such a large portion of the used car market, and because they are generally equipped with the personnel and physical equipment to discover odometer "rollbacks," public policy demands that auto dealers utilize their expertise to discover these alterations. Contrary to the implication of the trial court's ruling, dealers will not be allowed to close their eyes to the practice of altering odometer readings. The effect of the trial court's ruling would be to encourage used car dealers not to inspect the cars which they purchase. This would inevitably lead to the movement in interstate commerce of automobiles which are both less safe and of less market value than that indicated by the odometer reading.
 In testing Royal's liability for the innocent misrepresentation, the jury is free to draw the inference that while Royal's misrepresentation was made without actual intent to defraud, Royal could have discovered the truth, as the record aptly displays, by merely tracing back the records of ownership. Thus, in keeping with the letter and the spirit of federal public policy, consistent with our legal fraud statute, automobile dealers are required to use reasonable diligence to inspect used cars purchased for resale. [Emphasis added.]
In the Simmons case, we allowed the use of the proscriptions in the federal statute in connection with our legal fraud statute, even though the plaintiff had opted not to pursue his claims under the federal statute.
As in the Simmons case, plaintiff here claims that actions of the defendants have clearly collided with a congressional policy which is of the highest priority. Plaintiff here was engaged in competitive bidding on what is known as a "set-aside" contract to construct a commissary and mall interconnect. There has been no dispute that plaintiff was, at the time, and is presently, a small business as defined by the federal Act. However, plaintiff claims that Castle Construction Company, Inc., and Algernon Blair, Inc., are not small businesses as defined by the Small Business Administration Act, but that they conspired to put Collins Company, Inc., of Delaware in a position where it could obtain the contract by offering the lowest bid if it would represent that it was a small business. Plaintiff claims that Algernon Blair provided 80% of Castle's original capitalization; that Algernon Blair indemnified a surety under performance in bid bonds issued on behalf of Collins concerning the invitation to bid; that Algernon Blair and Castle allowed Collins to utilize their employees for the purposes of preparing bid estimates and for business operations of Collins concerning the invitation to bid; and that Algernon Blair and Castle placed their corporate officers as directors of Collins and did other things in order to put Collins in a better bargaining position than Tectonics could have been in, all in violation of the national policy favoring set-aside contracts for certain small businesses.
To answer the certified question in the affirmative is not to say that plaintiff would necessarily prevail. Plaintiff's claims of fraud, unjust enrichment, and interference with the business relationship are indeed viable causes of action under *Page 708 
Alabama law. Recently, our tort of interference with a business relationship has undergone careful scrutiny and emerges as a somewhat different cause of action than existed heretofore.
The essential elements of the tort now are as follows: (1) the existence of a contract or business relation; (2) defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with a contract or business relation; (4) absence of justification for the defendant's interference; and, (5) damage to the plaintiff as a result of defendant's interference. See Gross v. Lowder Realty,494 So.2d 590 (Ala. 1986); Lowder Realty Inc. v. Odom,495 So.2d 23 (Ala. 1986).
Because we have already allowed federal standards to be used as evidence in support of a state court claim, where the federal statute has not preempted the field, I am of the opinion that the definition of "small business" as set up in the federal act, and as determined by the Small Business Administration, could be used as evidence in connection with plaintiff's three state court claims.
JONES, ALMON and SHORES, JJ., concur.